526 A.2d 778

**Dennis L. LANDIS**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (HERSHEY EQUIPMENT CO.).**

**Appeal of HERSHEY EQUIPMENT COMPANY.**

Supreme Court of Pennsylvania.

Argued Jan. 27, 1987.

Decided June 8, 1987.

42

W. Jeffrey Sidebottom, George C. Werner, Lancaster, for appellant.

Dennis L. Plank, Lancaster, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

McDERMOTT, Justice.

Dennis Landis worked for Hershey Equipment Company for over three years. His job was to install and service poultry equipment in chicken houses, tasks which often placed him in enclosures abounding with chicken excrement. While so employed, Landis began to experience peculiar visual problems manifested by a distortion and loss of central vision in his right eye.

An ophthalmologist informed Landis that his sight was affected by a condition associated with his work environment. The specific diagnosis was "presumed ocular histoplasmosis," a rare disease the etiology of which is not clearly understood. Landis' ophthalmologist explained the working hypothesis of how the disease progresses as follows. There is a fungus called histoplasma which exists in

soil and flourishes in accumulations of fowl excrement. The spores of this fungus become airborne and are inhaled by humans. In a small number of those persons so invaded, the presence of the histoplasma triggers an "allergic" reaction in the host's eyes characterized by inflammation of the macular area, that part of the eye enabling clear central vision. This enhanced reaction to the histoplasma organism is designated "presumed ocular histoplasmosis." The doctor explained that the adjective "presumed" is used "because the organism which causes the reaction has never been found in the ocular tissue in patients that have had all the clinical findings of the syndrome;" and that the designation "presumed ocular histoplasmosis" is "the working hypothesis that this is the type of allergic reaction in the eye to the presence of the organism elsewhere in the body."

In the case of Mr. Landis the inflammation was accompanied by hemorrhaging and subsequent scarring that affected the central vision in his right eye. Though he could still perform his duties, Landis feared further damage to his eyesight and prudently chose to abandon his employ with Hershey Equipment. Unfortunately, this change came too late to prevent the permanent loss of central vision in his right eye. This loss prompted Landis to file a claim for benefits under the Workmen's Compensation Act.[1]

The referee who initially heard Landis' claim determined that a showing of an occupational disease within section 108(n) of the Act[2] had not been made and denied the claim. Landis appealed to the Workmen's Compensation Appeal Board, which affirmed the referee's decision with the added

1. Act of June 2, 1915, P.L. 736, art. 1, § 101 *et seq., as amended;* 77 P.S. § 1 *et seq.*

2. 77 P.S. § 27.1(n), which provides in relevant part:
   The term "occupational disease," as used in this act, shall mean only the following diseases.

   . . . .

   (n) All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population ...

rationale that the claimant's medical expert had given equivocal testimony.

On appeal the Commonwealth Court reversed the Board's conclusion that the medical testimony was equivocal and further ruled that Landis had made an adequate showing to satisfy section 108(n). In support of that decision the court analyzed the testimony of Dr. Paul Nase, the claimant's ophthalmologist, and determined that it was sufficient as to the three required proofs of section 108(n), *i.e.*, that Landis was exposed to presumed ocular histoplasmosis by reason of his employment with Hershey Equipment; that this disease was causally related to that employment; and that the incidence of this disease is substantially greater in the claimant's occupation at chicken houses than in the general population. *Landis v. Workmen's Compensation Appeal Board (Hershey Equipment Corp.)*, 91 Pa.Cmwlth. 238, 496 A.2d 1324 (1985).

Upon petition we granted allowance of appeal.

■ Appellant's principal argument is that the Commonwealth Court erred in concluding that appellee had successfully carried his burden of proving that "presumed ocular histoplasmosis" was "substantially greater in his industry" than in the general population. *See* section 108(n)(3); 77 P.S. § 27.1(n)(3). We agree.

At the hearing, the claimant's physician offered the following limited testimony on this issue:

Q. Doctor, to the best of your knowledge, is this histoplasmotic condition characterized—how would you characterize the rate of occurrence of this disease?

A. I have no idea in this area.

Q. In your opinion, Doctor, would an individual in an occupational capacity such as Mr. Landis, have a greater risk of exposure than say you or I?

A. Yes.

Q. Is there any information or knowledge as to how much a greater risk is available to him at the present time?

A. Not to my knowledge.

In their opinion the Commonwealth Court glossed over this specific testimony and focused on the factors which tended to show that Mr. Landis contracted the disease at his work place. *See Landis,* 91 Pa.Cmwlth. at 245, 496 A.2d at 1327. Unfortunately, this analysis was incorrect.

In *County of Allegheny v. Gallo,* 49 Pa.Cmwlth. 506, 411 A.2d 877 (1980), the Commonwealth Court correctly interpreted section 108(n) as requiring "something *more than* a greater incidence of disease in a particular industry." *Id.* at 509, 411 A.2d at 878 (emphasis added). *See Colt Industries v. Workmen's Compensation Appeal Board,* 57 Pa. Cmwlth. 463, 426 A.2d 743 (1981). However, for whatever reason, the Commonwealth Court ignored this precedent and ordered recovery where claimant's evidence demonstrated nothing more than he had a "greater risk of exposure" to the disease by virtue of his employment. This evidence was deficient in two critical aspects. First, the claimant's witness never qualified what he meant by "greater." A one percent increase in risk of exposure constitutes a greater risk, but it does not constitute "a substantially greater" risk as required by the statute. Secondly, "risk of exposure" is not the same as "incidence of disease." The first description, which merely identifies potential, is in no way equal to the latter description, which identifies actual injuries attributable to the conditions of the workplace. The statute mandates proof of the latter.

Therefore, we find that as a matter of law the Commonwealth Court was incorrect when it reversed the Board's determination that claimant had failed to show "that the incidence of the aforementioned disease is substantially greater in the claimant's occupation than in the general population." Opinion of Board, A–85276, p. 3. Our inquiry, however, is not at an end.

██ Recently, we have established that a claimant whose injury is in the nature of an insidious "occupational disease" is not precluded from benefits merely because he does not fall within section 108. *Pawlosky v. Workmen's Compen-*

*sation Appeal Board,* 514 Pa. 450, 525 A.2d 1204 (1987). Such a claimant may still prove his claim by showing the existence of a work-related injury under section 301(c), 77 P.S. § 411. Neither the Board, nor the referee considered whether claimant's medical evidence was sufficient to show causation under the general injury section of the Workmen's Compensation Act, section 301(c), 77 P.S. § 411. In addition, because at the time of Mr. Landis' claim the Board considered section 108(n) the exclusive means by which a claimant could recover for an unenumerated insidious disease neither of the parties presented their cases as a section 301(c) claim. Therefore, we think it is necessary to remand this to the Board for a new hearing at which time new evidence can be adduced concerning Mr. Landis' claimed injury.

Accordingly, the Order of the Commonwealth Court is reversed and this case is remanded to the Board for proceedings consistent with this opinion.

HUTCHINSON and PAPADAKOS, JJ., file dissenting opinions.

HUTCHINSON, Justice, dissenting.

I agree with the majority's determination that this claimant failed to show a *substantially* greater risk of contracting ocular histoplasmosis in the poultry industry and thus failed to meet the requirements of section 108(n) of the Workmen's Compensation Act. However, I disagree with its remand for purposes of determining whether this claimant could recover under section 301(c) of the Act for the reasons set forth in my dissenting opinion in *Pawlosky v. Workmen's Compensation Appeal Board,* 514 Pa. 450, 525 A.2d 1204 (1987).

PAPADAKOS, Justice, dissenting.

Mr. Landis lost the sight of his right eye because of a condition associated with his work environment. This fact is uncontroverted in the record and acknowledged by the majority (p. 42–44). In my opinion, it is totally irrelevant

whether the incidence of this disease (presumed ocular histoplasmosis) is substantially greater in the claimant's occupation at chicken houses than in the general population. Such proof is required only when causation is questionable and the disease could have been contracted in the general population, and it is not an uncontroverted fact that the disease was contracted in the work place.

It insults the integrity of our work force when we admit their disease is work related, but we deny them benefits because their disease is also 'catchable' in the general population. I do not believe that Section 108(n) was ever intended to defeat a proven claim of a diseased condition caused in the work place.

And then, again, we insult the intelligence of the people when we demand proof that there are substantially more chickens in the chicken houses than there are in the general populace.