624 A.2d 686

**William E. ARTHRELL, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (PA. STATE POLICE), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 24, 1992.

Decided April 7, 1993.

James L. McAneny, for petitioner.

John D. O'Brien, for respondent.

Before DOYLE, COLINS and KELLEY, JJ.

COLINS, Judge.

William E. Arthrell (claimant) petitions for review of the June 4, 1992 opinion and order of the Workmen's Compensation Appeal Board (Board) affirming the decision and order of the referee, which denied claimant workmen's compensation benefits. On December 19, 1988, claimant filed a petition for compensation alleging that as of August 1, 1988, he was suffering from "unipolar depression," which rendered him unable to perform his job duties as a Pennsylvania State Police trooper. It is noted that claimant's petition failed to specifically allege that claimant's depressive state was the result of his job.

Following several hearings, the referee issued a decision and order dated May 24, 1990, denying claimant benefits and making the following pertinent findings of fact and conclusions of law:

## FINDINGS OF FACT

4. When he worked as a patrol officer, the claimant's duties included general accident investigation and enforcing the Motor Vehicle Code; initial investigation of crime scenes and preserving of serious crime scenes until the arrival of the criminal investigators; and rotating communications duties involving taking telephone calls and dispatching cars. He was required to carry a gun and drive a patrol car.

5. The claimant alleged statutory notice to his employer on July 31, 1988. The allegation, which is undenied, is deemed admitted.

6. The claimant; Raymond D. Martinez, a corporal and shift supervisor with the State Police and a co-worker of the claimant; Charles Veil, the claimant's F.O.P. representative in 1984 and 1985; and Richard C. Anderegg, a trooper who

worked with the claimant in 1984 and 1985, all testified credibly concerning various circumstances of the claimant's employment from 1984 until he last worked on July 31, 1988.

7. In February or March, 1984, the claimant and Corporal Martinez were summoned to meet with Lieutenant Clanagan, their commanding officer, at a location away from the barracks at 11:30 in the evening. At that meeting, Lieutenant Clanagan berated the claimant and Corporal Martinez. Corporal Martinez, the shift supervisor, had adjusted the barracks schedule to permit the claimant, who had mistakenly appeared for an earlier shift, to work that shift, instead of leaving and returning at his scheduled time. Corporal Martinez, as shift supervisor, had the authority to change a shift assignment. Lieutenant Clanagan nonetheless accused the claimant and this witness of conspiring to undermine his authority by changing the assignment. He also called them obscene names. Based on the claimant's testimony and the testimony of Corporal Martinez, your referee finds that Lieutenant Clanagan's actions in this instance subjected the claimant to abnormal working conditions. Specifically, your referee finds that the normal and expected stresses and strains of being a state police officer do not include being subjected to verbal abuse from a superior for actions which were without any apparent fault.

8. In early 1985, Lieutenant Clanagan gave the claimant four disciplinary action reports for an incident involving allegations of watching television in the barracks. Lieutenant Clanagan told Corporal Veil that he would issue one, and not four reports, if the infraction had involved another officer, rather than the claimant. Based on the testimony of the claimant and of Corporal Veil, your referee finds that the claimant was treated in an unusually severe manner in this instance and that this treatment constituted abnormal working conditions.

9. In March, 1985, the claimant received a verbal reprimand from Lieutenant Clanagan for taking two individuals, who had run out of gas, to a service station in his patrol car.

It is the claimant's uncontradicted testimony that his actions in helping these individuals were appropriate procedure. Your referee finds that the verbal reprimand by Lieutenant Clanagan constituted subjecting the claimant to abnormal working conditions, in that the claimant would not normally expect to be reprimanded for performing his job duties.

. . . .

11. The claimant had no other problems or conflicts with Lieutenant Jungling, who succeeded Lieutenant Clanagan, or Lieutenant Neville, who succeeded Jungling.

12. On July 31, 1988, the claimant became disoriented at work, and was discovered by a fellow officer, asleep in his car. He was awakened, changed clothes, and went home without telling anyone. He then went to sleep at home, and awoke with severe chest pains. His wife took him to the emergency room at the Medical Center of Beaver County. After testing, the claimant was referred to James G. Huha, Ph.D., a licensed psychologist, for treatment.

13. Dr. Huha performed a mental status examination and psychological testing of the claimant. He credibly testified that the claimant had suffered from a borderline personality disorder since adolescence, and that he had a unipolar depression and panic attacks, with some psychotic features. The claimant was incapable of performing his work. Based on Dr. Huha's credible testimony, your referee finds that the claimant's severe and presently disabling mental illness was caused or aggravated by the stresses of his job, including both the events found by your referee to be abnormal, and the claimant's subjective reaction to normal stresses which would occur in any state trooper's work environment.

14. The claimant's Petition was filed more than three years after March, 1985, the last time the claimant was exposed to abnormally stressful work conditions.

## DISCUSSION

. . . .

The claimant had a pre-existing, previously non-disabling personality disorder. Although he did not become disabled

until August 1, 1988, he last suffered a work-related psychic injury in March, 1985, when he was reprimanded for taking stranded motorists to a gas station. The record contains no objective evidence of any abnormally stressful work conditions after that date. Under the Act, it is the date of injury which commences the running of the three-year statute of limitations, and the date of the claimant's disability is irrelevant. McDevitt v. W.C.A.B., 1525 A.2d 1252 (Pa.Cmwlth. 1987). Accordingly the Petition must be dismissed.

## CONCLUSIONS OF LAW

The claimant met his burden of proving he provided timely notice of his injury pursuant to Section 311 of the Act. This claim is barred by Section 315 of the Act because the claimant's last cognizable work-related psychic injury occurred in March, 1985, more than three years prior to the filing of the Petition.

The referee found claimant's witnesses to be sufficiently credible to warrant making findings that on certain specific occasions, abnormal working conditions had been imposed on claimant. However, the referee notes that the last such occasion of abnormal working conditions occurred in March of 1985, over three years before the filing of claimant's petition in December of 1988, therefore barring his claim pursuant to Section 315 of The Pennsylvania Workmen's Compensation Act (Act).[1] Claimant appealed to the Board which, by decision and order dated June 4, 1992, affirmed the referee. This appeal followed.

We note that our scope of review is limited to determining whether an error of law was made, constitutional rights were violated, or crucial findings of fact were supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compen-*

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 602, which provides, in pertinent part:

   In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof.

*sation Appeal Board (Skirpan),* 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990), *affirmed,* 531 Pa. 287, 612 A.2d 434 (1992). The issue for our determination is whether the Board erred in affirming the referee's finding that Claimant's December 19, 1988 claim petition was barred by Section 315 of the Act, 77 P.S. § 602.

Claimant contends that the Board erred in affirming the referee's use of March 1985 (the date "he last suffered a work-related psychic injury"), instead of August 1, 1988 (the onset date of his disability), for purposes of tolling the three-year limitation period set forth in Section 315. On July 31, 1988, claimant had become disoriented at work and was subsequently taken to the hospital for chest pains, at which time he was also referred to a psychologist, who diagnosed claimant's psychological problems. It is claimant's position that unlike physical injuries, psychological injuries such as his, are often sustained over a protracted time period that precludes assigning a single, discrete onset date to the condition. Moreover, avers claimant, although the initial instances of abnormal working conditions to which he was subjected occurred as early as 1984, he was not cognizant of the resultant psychic injuries he had sustained until July 31, 1988, essentially the first time that his daily functioning was perceptibly impaired.

Upon examining the record, we concur with the Board. In *Berisford v. Workmen's Compensation Appeal Board (Jessop Steel Company),* 142 Pa.Commonwealth Ct. 83, 596 A.2d 1237 (1991), this Court unequivocally stated:

> We clearly held in McDevitt that for purposes of the three-year limitation in Section 315 the date of injury is controlling. Cf. *Eddy v. Workmen's Compensation Appeal Board (Bell Transit Inc.),* 130 Pa.Commonwealth Ct. 306, 568 A.2d 279 (1989), petition for allowance of appeal granted, 525 Pa. 606, 575 A.2d 570 (1990) (explaining that in *specific loss* cases, 'the date of injury [for Section 315 purposes] is the date when the claimant is notified by a doctor of the loss of use of the member or faculty for 'all practical intents and purposes' and that the injury is job related in nature'), *id.,* 130 Pa.Commonwealth Ct. at 310, 568 A.2d at 281 (citing

*Universal Cyclops Corp. v. Workmen's Compensation Appeal Board* (Cherry), 97 Pa.Commonwealth Ct. 399, 509 A.2d 956 (1986)).

*Id.* at 88, 596 A.2d at 1240.

Applying the *Berisford* rationale to the present case, we find that the referee properly chose the last documented date that claimant experienced abnormal working conditions, March 1985, as the start date for tolling the three-year limitation period. In this regard, *Berisford* further distinguishes a situation, such as the present case, from one in which the question is to determine timeliness of notice to the employer, in which case the date of disability, rather than the date of injury controls.

■ As to claimant's argument that he did not discover he had a psychological injury until July 31, 1988, when he became unable to perform his customary job responsibilities, we find that precedent has sharply limited the applicability of the discovery rule[2] in some types of workmen's compensation claims. In *Eddy v. Workmen's Compensation Appeal Board (Bell Transit, Inc.)*, 130 Pa.Commonwealth Ct. 306, 568 A.2d 279 (1989), *petition for allowance of appeal granted*, 525 Pa. 606, 575 A.2d 570 (1990), this Court stated:

In *Young* the claimant suffered a disability due to the aggravation of a preexisting medical condition, rather than an occupational disease or an injury caused by ionizing radiation and argued that a discovery rule should apply in his case. This Court addressed the time limitations of Sections 311 and 315 of [the Act] ... and held that a claimant may not use a discovery rule to file a petition under Section 315 within three years after discovering an injury that is not the result of occupational disease or ionizing radiation. In so holding, we observed the distinctions between Section 311 and Section 315, which distinctions we reiterate again today.

**2.** The "discovery rule" in this sense would allow a claimant to file a petition within three years of the time when he discovers that he is injured and that his injury is work-related.

The Section 311 *notice* provision specifically allows the discovery rule to be applied:

> in cases of injury resulting from ionizing radiation *or* any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term 'injury' in this section means, in cases of occupational disease, disability resulting from occupational disease. (Emphasis added.)

> The Act also specifically provides for the use of the discovery rule under the Section 315 *filing* provisions, but only in cases of injury resulting from ionizing radiation. Conspicuous by its absence from Section 315 is the specific statutory allowance of the discovery rule in situations where the injury or its employment relationship is not known to the employee.

> *Id.,* 130 Pa.Cmwlth. 306, at 308–10, 568 A.2d at 281 (footnotes omitted).

In consideration of the foregoing and the fact that the claimant herein is not suffering from an occupational disease or injuries produced by ionizing radiation, we are constrained to agree with the Board's decision. Additionally, our examination of the record supports the Board's affirmance of the referee's conclusion that claimant failed to present any objective evidence of abnormal working conditions occurring after the March, 1985 date.

Accordingly, based on the above discussion and the fact that the subject claim is time barred because of having been filed more than three years after the date of claimant's injury, the Board's decision is affirmed.

## ORDER

AND NOW, this 7th day of April, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.