667 A.2d 710

**ARMCO, INC., Appellant,**

v.

**WORKMEN'S COMPENSATION APPEAL
BOARD (MATTERN), Appellees.**

Supreme Court of Pennsylvania.

Submitted July 17, 1995.

Decided Nov. 28, 1995.

Edward A. McFarland, for ARMCO.

Samuel Blaufeld, for C. Mattern.

Before NIX C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

In this workers' compensation case, Appellant, Armco, Inc. (Employer) appeals from an order and an opinion of the Commonwealth Court affirming an order of the Workmen's Compensation Appeal Board (Board) which in turn affirmed the referee's award of workers' compensation benefits to Appellee, Clarence Mattern (Claimant).[1]

Claimant, born on October 12, 1924, began to work for Employer on September 21, 1950. Claimant was employed as a scarfer. His last day of work with Employer was September 30, 1984. On July 13, 1988, Claimant filed a claim petition for workers' compensation benefits alleging an occupational disease pursuant to Section 108 of the Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 27.1.[2] Specifically, Claimant alleged that while working as a scarfer, he was exposed to dust and fumes that caused chronic obstructive lung disease, and that he was therefore, totally disabled as of September 14, 1984. At the hearing before the referee, Claimant testified as to the breathing problems he was experiencing, and further, testified

---

**1.** While recognizing that the legislature recently redesignated "referees" as "judges", *See* 77 P.S. § 701, because this claim petition was filed prior to that amendment, we will use the term referee.

**2.** Under this section, in addition to specific references, "occupational disease" also includes

All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population.
77 P.S. § 27.1(n)

that he was first notified of the alleged condition and its work-relatedness by Dr. Michael Wald on June 8, 1988. It was stipulated that Claimant notified Employer of the alleged injury on June 30, 1988.

In support of his claim, Claimant presented the medical testimony of Dr. Wald and Dr. Nicolas Tapyrik. Based upon the testimony presented, the referee found that Claimant had, in fact, been exposed to dust, gasses and fumes while employed by Armco, Inc. Moreover, based upon the testimony of Dr. Wald, Dr. Tapyrik and Claimant, the referee concluded that Claimant was totally disabled as a result of chronic obstructive lung disease with a manifestation of both chronic bronchitis and pulmonary emphysema. (Referee's July 16, 1990 decision at Finding of Fact No. 6.) However, resulting from Claimant's history of heavy cigarette smoking and from the medical testimony presented, the referee specifically determined that "[w]hile the Claimant's lung condition is related to his cigarette smoking, the irritant fumes and dusts from his work environment were of significance in aggravating the underlying pre-existing condition. . . ." (Referee's June 26, 1992 decision at Finding of Fact No. 5.) [3] Finding Claimant's medical witnesses to be more credible, the referee specifically rejected the testimony of Employer's medical witness, Dr. George Fino, who did not believe that Claimant's occupation was a contributing factor to the lung disease.

Both of Claimant's medical witnesses also testified that because the work environment would further cause an aggravation to his underlying lung disease, Claimant could not return to work as a scarfer. As a result of such testimony, the referee found that Claimant was totally disabled as of September 14, 1984, that he was physically unable to perform

3. The Referee further found that this opinion was supported by the testimony of Dr. Tapyrik who believed that while Claimant's "cigarette smoking was the major factor in the development of Claimant's type of lung disease, the Claimant's occupational history was a significant contributing factor to his condition, and his work environment aggravated his underlying lung condition." (Referee's June 26, 1992 decision at Finding of Fact No. 6.)

his regular job as a scarfer, and accordingly, that he was entitled to benefits.

Employer appealed to the Board, arguing that the referee's award did not specify whether compensation had been awarded pursuant to Section 301(c)(1), 77 P.S. § 411(1),[4] or Section 301(c)(2), 77 P.S. § 411(2).[5] The Board agreed that the award lacked specificity and remanded the case so that the referee could specify under which section compensation had been awarded. On remand, the referee concluded that based upon the facts and the medical testimony, Claimant suffered from an occupational disease, and in that regard, he was entitled to total disability benefits pursuant to Section 301(c)(2) and Section 108(n) of the Act.

Employer once again appealed to the Board. Employer, citing *Landis v. W.C.A.B. (Hershey Equipment Co.)*, 515 Pa. 41, 526 A.2d 778 (1987), argued that the testimony was legally insufficient to support an award of compensation under Section 108(n) and Section 301(c)(2) because Claimant's medical witnesses did not testify to a greater incidence of disease in Claimant's occupation as required by Section 108(n). The Board disagreed. The Board concluded that Dr. Wald had testified that Claimant's occupation subjected him to a sub-

4.  In pertinent part, this section provides:

    The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury. . . .

5.  This section provides, in part:

    The terms "injury," "personal injury," and "injury arising in the course of his employment," as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act: Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease. . . . The provisions of this paragraph (2) shall apply only with respect to the disability or death of an employe which results in whole or in part from the employe's exposure to the hazard of occupational disease after June 30, 1973. . . .

stantially greater risk of aggravating an underlying chronic obstructive lung disease, rather than testifying to a generally greater risk of exposure. As such, the Board affirmed the award of benefits.

On appeal to the Commonwealth Court, Employer again argued that Claimant simply had failed to establish that he suffered from an occupational disease under Section 108(n), and therefore, was not entitled to benefits. The Commonwealth Court agreed that in order to be eligible for compensation under Section 108(n), a claimant must establish that (1) he was exposed to lung disease by reason of his employment, (2) the lung disease is causally related to the occupation and (3) the incidence of lung disease is substantially greater in claimant's occupation than it is elsewhere. *Fruehauf Corp., Independent Metal Division v. W.C.A.B. (Cornell),* 31 Pa.Commw. 341, 376 A.2d 277 (1977). After reviewing those factors, the Commonwealth Court agreed with Employer that even though the first two prongs had been established by the testimony, Claimant's medical testimony was legally insufficient because it failed to establish that the "incidence of his lung disease is substantially greater in his occupation than [is present] in the general population." *Armco, Inc. v. W.C.A.B. (Mattern),* 167 Pa.Commw. 273, 280, 647 A.2d 985, 989 (1994). Consequently, the Commonwealth Court determined that Claimant had failed to prove that his disability resulted from an occupational disease as set forth in Section 108(n).

Notwithstanding that determination, the Commonwealth Court affirmed the award' of benefits. Even though Claimant had failed to establish compensability for an occupational disease, the Commonwealth Court held that Claimant was entitled to benefits under Section 301(c)(1) because he had suffered an aggravation of a pre-existing disease, and furthermore, because that aggravation was partly responsible for his total disability.

■ Initially, it is important to note that this Court has held that Section 301(c)(1) "makes it clear that the job-related aggravation of *a* disease is a category of 'injury' for [workers']

compensation purposes." *Pawlosky v. Workmen's Compensation Appeal Board,* 514 Pa. 450, 461, 525 A.2d 1204, 1210 (1987) (footnote omitted). Consequently, the Commonwealth Court correctly held that based upon the referee's findings of fact, the job-related aggravation of Claimant's underlying lung condition, in fact, would constitute an injury for purposes of Section 301(c)(1).

Nevertheless, prior to affirming the award of benefits based upon its opinion that Claimant suffered from a Section 301(c)(1) injury, the Commonwealth Court neglected to consider whether Claimant had timely filed his claim petition. Accordingly, we granted allocatur in this case in order to determine whether the statute of limitations found in Section 315, 77 P.S. § 602,[6] precludes the award of benefits.[7] We shall therefore proceed to review Employer's contention that Claimant's petition is time-barred.

Employer does not refute that a job-related aggravation of a pre-existing disease is a compensable injury for purposes of the Workmen's Compensation Act. Instead, Employer asserts that in cases where an **aggravation** of a pre-existing condition is the **injury** for purposes of the Act, logically, each day worked subject to the aggravation would constitute a "new" injury. Consequently, because the last day of work would also be the last date of a work-related aggravation, a claimant seeking compensation for a work-related aggravation

**6.** 77 P.S. § 602 provides, pertinent part:

In cases of personal injury all claims for compensation shall be forever barred ... unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof.... However, in cases of injury resulting from ionizing radiation in which the nature of the injury or its relationship to the employment is not known to the employe, the time for filing a claim shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

**7.** The propriety of the Commonwealth Court's decision that Claimant failed to carry the burden of proof necessary to establish disability under Section 108(n), particularly under the third prong of the *Fruehauf* test, has not been questioned by the parties.

of a pre-existing condition would be required to file a claim petition within three years of the last day of work. In that regard, Employer urges this Court to adopt the reasoning of *Young v. W.C.A.B. (Jones & Laughlin Steel Corp.)*, 97 Pa. Commw. 356, 509 A.2d 945 (1986) and *Eddy v. W.C.A.B. (Bell Transit, Inc.)*, 130 Pa.Commw. 306, 568 A.2d 279 (1989), *aff'd per curiam*, 534 Pa. 302, 632 A.2d 873 (1993). Specifically, Employer contends that we should not graft a discovery provision into Section 315, especially in light of our legislature's failure to do so.

Claimant, on the other hand, believing that Employer is requesting this Court to reverse the Commonwealth Court's award of benefits on the basis of untimely notice and untimely filing,[8] requests that we sustain the Commonwealth Court's award of benefits, principally relying on the dissenting opinion of Judge Barbieri in *Young*. Claimant argues that an anomalous situation is created when a claimant is required to give notice of an injury that neither he nor the employer knows is related to the employment. Moreover, Claimant contends that our holding in *Price v. W.C.A.B.*, 533 Pa. 500, 626 A.2d 114 (1993) is analogous, and therefore, its rationale should be extended to cover the present factual situation. Essentially, Claimant argues that under the humanitarian purposes of the Act, this Court should apply the discovery rule to the general injury provisions of Section 315, and in so doing, find that he timely filed his claim petition.

This precise issue was first addressed by the Commonwealth Court in *Young v. Workmen's Compensation Appeal Board (Jones & Laughlin Steel Corp.)*, 97 Pa.Commw. 356, 509 A.2d 945 (1986). Therein, claimant became totally disabled on March 14, 1975, as a result of an aggravation of a cervical and lumbar spondylosis. He, however, did not learn that his injury was work-related until his doctor notified him

8. It is clear that Employer is only arguing that Claimant **filed** the claim petition too late. Employer frames the issue as follows: "The issue is whether claims brought under Section 301(c)(1) of the Workers' Compensation Act, 77 P.S. § 411(c)(1) [sic], and *Pawlosky* are subject to the three year statute of limitations provided by Section 315 of the Act, 77 P.S. § 602." (Employer's Brief at 8).

of that fact on April 3, 1978. Immediately thereafter, on April 19, 1978, claimant filed a claim petition. The referee awarded benefits, specifically finding that the claim was not time-barred because " '[C]laimant filed his claim petition within three years of when he knew, or by the exercise of reasonable diligence, should have known of the existence of his injuries and their possible relationship to his employment.' " *Id.* at 358, 509 A.2d at 946 (citing Referee's Conclusion of Law No. 3). On appeal, the Board determined that because the injury was an aggravation of a pre-existing condition, the date of the "injury" was March 13, 1975, claimant's last day of work. Consequently, the Board concluded that the claim petition had been filed outside of the three year limitations period, and as such, reversed the award of benefits.

On appeal to the Commonwealth Court, claimant argued that Section 315 should be liberally construed in order to have the same effect as Section 311.[9] The Commonwealth Court, however, concluded that the limitations period contained in Section 315 is a limitation upon the time in which claims for compensation for a work-related injury may be brought, and furthermore, that the limitations period begins with the occurrence, or date, of the injury. *Id.* at 360–361, 509 A.2d at 947.

Moreover, specifically addressing the variation between the language used by the legislature in Section 311 and the

9. 77 P.S. § 631 provides:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

language used in Section 315, the Commonwealth Court stated:

> Tracing the various amendments to both sections, we have found that both Section 311 and Section 315 were amended by Act No. 61 of 1972, Act of March 29, 1972, P.L. 159. On that occasion, only the first sentence of Section 311 was amended while Section 315 was amended by substituting the word "injury" for the word "accident".
>
> Both sections were again amended by Act No. 223 of 1972, Act of October 17, 1972, P.L. 930. At this time, the last two sentences of the present language in Section 311 were added. It is this language which creates the problem we now confront. Section 315 was amended by adding the last sentence of the present language which simply includes disability from occupational disease as an injury. We think it is significant that Section 315 was amended but did not include the language added to Section 311.
>
> There have been no further amendments to Section 311 but Section 315 was again amended by Act No. 263 of 1974, Act of December 5, 1974, P.L. 782, to extend the time for filing of claims from two to three years from the date of the injury.
>
> Inasmuch as the Legislature has twice addressed both sections simultaneously and did not choose to make the language of both sections identical and again amended Section 315 without adding the language it had used in Section 311, **we are of the opinion that it is the plain language of Section 315 that must control in determining legislative intent. 1 Pa.C.S. § 1921(b).**

*Id.* at 362–363, 509 A.2d at 948 (emphasis supplied).

As such, the Commonwealth Court agreed with the Board's conclusion that the claim petition had been filed more than three years after the date of the injury. The court also noted:

> Claimant urges this Court to judicially amend Section 315 by adding "or any other cause" to Section 315 in the same manner as that language now appears in Section 311. This we decline to do. "[T]his Court cannot supply an apparent

omission in a statute even though it appears that the omission resulted from the Legislature's mere inadvertence or failure to foresee or contemplate a case in question." *Latella v. Unemployment Compensation Board of Review*, 74 Pa.Commonwealth Ct. 14, 30, 459 A.2d 464, 473 (1983).

**Whether Section 315 should be amended to include the omitted phrase is the province of the Legislature, not this Court.**

*Id.* at 363–364, 509 A.2d at 948–949 (emphasis supplied).[10]

Three years later, the Commonwealth Court was again confronted by this issue. In *Eddy v. Workmen's Compensation Appeal Board (Bell Transit, Inc.)*, 130 Pa.Commw. 306, 568 A.2d 279 (1989), claimant had been denied compensation benefits on the basis that his claim was precluded by the statute of limitations. In that case, claimant, employed by Bell Transit as a truck driver, was laid off on November 27, 1982. A month later, he became a self-employed truck driver. On April 29, 1983, as a result of neck pain which he had been experiencing for a number of years, claimant went to a chiropractor. The chiropractor informed claimant that he had a degeneration of the cervical area of his spine, and further, attributed the condition to truck driving.

Following surgery to alleviate the pain, claimant notified Bell Transit, his previous employer, of the problem on June 16, 1983. He, however, did not file a claim petition. Subsequently, while acting in his status as a self-employed truck driver, claimant reinjured his neck, requiring further medical

---

**10.** In his dissent, Judge Barbieri, relied on the analysis employed in the occupational disease cases. While recognizing that the case did not involve an occupational disease, Judge Barbieri, nevertheless was of the opinion that

> In light of our previous interpretations of legislative enactments in Section 311 and 315, *as amended* in 1972, I believe that the construction is inevitable that the limitation in Section 315 may not be imposed in a case like this one where the disability, like that in an occupational disease case, is insidious to the extent that its relationship to the employment is undisclosed and undeterminable during a period here when neither the claimant nor the employer professes any knowledge of this relationship.

*Young*, 97 Pa.Commw. at 367, 509 A.2d at 950.

treatment. At that point, on April 8, 1986, claimant filed a claim petition against Bell Transit. The referee found that even though claimant had properly notified employer pursuant to Section 311, he had failed to file his claim petition within the three year statute of limitations as required by Section 315.[11]

Arguing that the limitations period set forth in Section 315 should not begin until he knew or should have known the extent of the injury and its work-relatedness, the claimant urged the Commonwealth Court to reverse the conclusion that his claim petition had been untimely filed. Essentially, claimant requested the Commonwealth Court to revisit its holding in *Young.*

While recognizing that the discovery rule had been applied to cases of total disability due to occupational diseases in *Jones & Laughlin Steel Corp. v. Workmen's Compensation Appeal Board (Feiertag),* 90 Pa.Commw. 567, 496 A.2d 412 (1985), the Court nonetheless opined:

> In *Young* the claimant suffered a disability due to the aggravation of a preexisting medical condition, rather than an occupational disease or an injury caused by ionizing radiation and argued that a discovery rule should apply in his case. This Court addressed the time limitations of Sections 311 and 315 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 631 and 602, respectively and held that a claimant may not use a discovery rule to file a petition under Section 315 within three years after discovering an injury that is not the result of occupational disease or ionizing radiation. In so holding, we observed the distinctions between Section 311 and Section 315, which distinctions we reiterate again today.

*Eddy,* 130 Pa.Commw. at 308–309, 568 A.2d at 281 (footnotes omitted). Consequently, based upon its holding in *Young,* the Commonwealth Court held that "[b]ecause the Claimant's injury, therefore, was not an injury of the type for which the

11. The Commonwealth Court noted that "the date of injury would have been his last day of work on November 27, 1982." *Eddy,* 130 Pa. Commw. at 308, 568 A.2d at 280 (footnote omitted).

discovery rule is to be applied, we affirm the Board's decision that the Claimant is barred from receiving workmen's compensation benefits because his claim petition was not timely filed." *Id.* at 312, 568 A.2d at 282 (footnote omitted).

We accepted allocatur and affirmed the Commonwealth Court's decision per curiam. *Eddy v. W.C.A.B. (Bell Transit, Inc.)*, 534 Pa. 302, 632 A.2d 873 (1993) (Papadakos, J. and Nix, C.J., dissenting).

█ It is well settled that when the terms of a statute are clear, the letter of the law is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). Our legislature has specifically provided:

> In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the **injury,** the parties shall have agreed upon the compensation payable under this article; or unless within three years after the **injury,** one of the parties shall have filed a petition as provided in article four hereof. . . . **However, in cases of injury resulting from ionizing radiation in which the nature of the injury or its relationship to the employment is not known to the employe, the time for filing a claim shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.** [In cases of occupational disease, t]he term "injury" in this section means . . . disability resulting from occupational disease.

77 P.S. § 602 (emphasis supplied).

We recently had a chance to address this statute in *Berwick Industries v. W.C.A.B. (Coralee A. Spaid)*, 537 Pa. 326, 643 A.2d 1066 (1994). Therein, we reiterated our explanation that a " '[f]ailure to file a claim within the statutorily prescribed period extinguishes the right, as well as the remedy, under the Workmen's Compensation Act.' " *Id.* at 329, 643 A.2d at 1067 (quoting *Taglianetti by Taglianetti v. W.C.A.B. (Hospital of the University of Pennsylvania)*, 503 Pa. 270, 273, 469 A.2d 548, 549 (1983)). Consequently, we recognized that pursuant

to the express terms of Section 315, a "claim for 'compensation' is completely barred unless all of the requirements of [the section] are met." [12] *Id.*

Today, again confronting the express terms of Section 315, we refuse to apply the discovery rule to the instant situation. Instead, we find that the law on this issue is settled, and as such, we believe that the Commonwealth Court erred by not considering the limitations period provided in the Act.

Claimant contends that our decision in *Price* is instructive, particularly as it relates to application of the discovery rule. Recognizing that his claim does not involve an occupational disease, Claimant, nonetheless, submits that our analysis in *Price* is equally applicable to this case because the injury for which he seeks compensation is an "insidious disease process which is caused by the daily aggravation of an underlying condition." (Appellees's Brief at 9.) We do not agree.

In *Price*, claimant worked in a lead refining and smelting plant where he was daily exposed to lead laden dust and loud noise. He left work in August of 1979 because physical ailments caused by his exposure to lead precluded him from continuing with employment in the lead plant. The evidence showed, however, that claimant was able to work at locations which were free of lead dust. Eventually, however, in March of 1983, claimant was medically advised that he suffered from lead encephalopathy, peripheral neuropathy, noise induced hearing loss, lead nephropathy, and severe chronic obstructive lung disease, and further, that he was totally disabled as a result of those conditions. Claimant filed a petition for compensation pursuant to the occupational disease provisions of the Act. The referee denied benefits on the basis that at the

12. This Court, noting that Section 315 is a statute of repose, recognized that while not desiring to minimize the salutary purposes of the Act, statutes of limitation and repose

> are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation.

*Berwick,* 537 Pa. at 335, 643 A.2d at 1070 (quoting *Schmucker v. Naugle,* 426 Pa. 203, 205–206, 231 A.2d 121, 123 (1967)).

time claimant resigned in 1979, he knew that his physical ailments were caused by his work conditions and therefore, the claim petition was not filed within the three year limitation of Section 315.

We recognized that Section 315 specifically sets forth that the term "injury" as used in that section means, in cases of **occupational disease, disability** resulting from occupational disease. Accordingly, we held that it is clear that "a claim for total disability benefits under the occupational disease provisions of the Workmen's Compensation Act cannot begin to run until the onset of total disability. . . ." *Price,* 533 Pa. at 505, 626 A.2d at 116. We also concluded that because the limitation period commenced at the point a claimant knew by competent medical diagnosis that a disability was caused by an occupational disease under the terms of the Occupational Disease Act, there· was "no reason to raise a distinction between the total disability arising under the Occupational Disease Act and that arising under the occupational disease provisions of the Workmen's Compensation Act." *Id.* at 506, 626 A.2d at 117. As such, we determined that in both of those instances, the limitations period would not begin to run until " 'pertinent medical diagnosis is completely established *to the knowledge* of the claimant' that his total disability is work related." *Id.* Herein, however, because the legislature specifically has provided that in occupational disease cases an injury is the disability which results from that disease, our holding is inapplicable to the present situation where benefits were awarded on the basis of the Act's general injury provisions.

When determining whether a petition has been timely filed under Section 315, "the date of Claimant's disability is irrelevant; it is the date of the *injury* which commences the running of the three-year limitation contained in that section." *McDevitt v. W.C.A.B. (Ron Davison Chevrolet),* 106 Pa. Commw. 207, 525 A.2d 1252 (1987), *appeal dismissed,* 520 Pa. 119, 552 A.2d 1048 (1989). Moreover, in concluding that a work-related aggravation of a pre-existing disease constitutes an injury within the meaning of Section 301(c)(1), we stated:

According to the medical evidence from both parties those fumes aggravated or irritated the claimant's condition and, **with each exposure,** would produce an adverse physiological reaction called a bronchospasm, during which he would undergo difficulty in breathing. Given the nature of a bronchospasm, **each instance in which such an attack was caused by the chemical fumes would constitute an "injury"** ... for purposes of the Act. That is, the claimant's inhalation of the chemical fumes would bring about an adverse and hurtful change in his system; and such change would cause him to suffer a lessened facility in the natural use of a bodily activity or capability, *i.e.,* breathing.

*Pawlosky v. W.C.A.B. (Latrobe Brewing Co.),* 514 Pa. 450, 461–462, 525 A.2d 1204, 1210 (1987) (emphasis supplied).

As such, based upon the medical testimony,[13] we recognized that each aggravation constituted an injury. Accordingly, the last day the aggravation occurs, which will most often be the last day of work, is the date from which the three year limitation should be calculated. *See Young v. W.C.A.B. (Jones & Laughlin Steel),* 97 Pa.Commw. 356, 509 A.2d 945 (1986). *See also Arthrell v. W.C.A.B. (Pa. State Police),* 154 Pa. Commw. 633, 624 A.2d 686 (1993), *allocatur denied,* 537 Pa. 613, 641 A.2d 312 (1994) (Commonwealth Court recognized that precedent has sharply limited the usage of the discovery rule and that where claimant is not suffering from ionizing radiation or from an occupational disease, the date of the injury is controlling); *Mancini's Bakery v. W.C.A.B. (Leone),* 155 Pa.Commw. 641, 625 A.2d 1308 (1993) (wherein the Commonwealth Court concluded that each day that claimant worked, he suffered a "new" injury in that the work further

13. Pawlosky's medical witness testified that even though he could not say how or when the claimant contracted asthma, the fumes from the chemicals to which the claimant was exposed would irritate the ailment and cause attacks. Employer's medical witness also testified that claimant's asthmatic condition would be aggravated or irritated by the chemicals at the brewery. Based upon this testimony, the referee determined that "claimant had asthma, that the ailment was aggravated by the fumes of chlorine, caustic soda and sulphuric acid, and that he was totally disabled as a result." *Pawlosky,* 514 Pa. at 453, 525 A.2d at 1206.

aggravated his preexisting condition); *Eddy v. W.C.A.B. (Bell Transit, Inc.)*, 130 Pa.Commw. 306, 568 A.2d 279 (1989), *aff'd per curiam*, 534 Pa. 302, 632 A.2d 873 (1993).

Therefore, because Claimant's last day of work for Employer was September 30, 1984, and assuming that the work-related aggravation continued throughout his term of employment, a claim petition must have been filed within three years of that date. Claimant did not file his claim petition until July 13, 1988. Consequently, Claimant filed too late and as a result, his claim is barred by Section 315. Accordingly, the award of benefits pursuant to Section 301(c)(1) was in error, and as such, the Commonwealth Court's order awarding benefits is reversed.

CAPPY, J., concurs.

NIX, C.J., dissents.

MONTEMURO, J., participates by designation as a senior judge as provided by Rule of Judicial Administration 701(f).

CAPPY, Justice, concurring.

I am constrained to concur in the result reached by the Majority, as I believe it is required by the applicable statute of limitations found in Section 315 of the Pennsylvania Workmen's Compensation Act (the "Act"). 77 P.S. § 602. However, I write separately to put the General Assembly on notice of its failure to amend Section 315 to allow for application of the discovery rule to situations like the one *sub judice*, and of the harm caused by this blatant omission.

Mr. Clarence Mattern worked for Armco, Inc. ("Armco") for 34 years as a hand scarfer. As a hand scarfer, Mr. Mattern removed impurities from pieces of steel with a torch during which "black, sooty stuff" was produced. Mr. Mattern breathed this by-product for 26 years prior to Armco's providing him with a respirator. (R.R. pp. 10a–11a).

In 1984, Mr. Mattern became incapable of performing his duties as a hand scarfer because of "chronic obstructive lung disease." However, it was not until June, 1988 that he was

informed by his physician that although his disease was related to cigarette smoking, the irritant fumes and dust from his work environment were significant in aggravating the underlying pre-existing condition. Furthermore, the physician also indicated that the fumes and dust caused an acceleration of the disease process. Immediately after learning of the causal connection between his disease and his work for Armco, Mr. Mattern filed a claim petition under the Act.

Ultimately, the Commonwealth Court determined that Mr. Mattern suffered from a compensable "injury" under Section 301(c)(1) of the Act, 77 P.S. § 411(1), and affirmed the Workmen's Compensation Appeal Board's (the "Board") award of benefits.[1] However, today, the Majority is seemingly compelled to deny Mr. Mattern's award of benefits based on the express terms of the three year statute of limitations relating to a compensable "injury" found in Section 315 of the Act.

Mr. Mattern urges that in light of the humanitarian purpose of the Act, we should apply the discovery rule to the general injury provisions of Section 315. In support of his argument, Mr. Mattern correctly notes that the notice requirement of Section 311 of the Act, 77 P.S. § 631, allows for the application of the discovery rule.[2] However, the Majority points out that the statute of limitations found in Section 315 does not include the language found in Section 311, and, thus, does not allow for the application of the discovery rule except in cases of

1. The parties did not challenge the Commonwealth Court's determination that Mr. Mattern failed to establish that he suffered from an occupational disease. Had the Commonwealth Court affirmed the Board's decision and the Referee's finding that Mr. Mattern suffered from an occupational disease pursuant to Sections 301(c)(2) and 108(n) of the Act (77 P.S. § 411(2) and 77 P.S. § 27.1(n) respectively), the discovery rule would have been applicable to this case pursuant to this Court's recent decision in *Price v. Workmen's Compensation Appeal Board (Metallurgical Resources)*, 533 Pa. 500, 626 A.2d 114 (1993).

2. " . . . However, in cases of injury resulting from ionizing radiation *or any other cause* in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. . . ." (emphasis supplied). 77 P.S. § 631.

injury resulting from ionizing radiation.[3] (Maj. Op. at pp. 370–373). Tracing the legislature's amendments to Sections 311 and 315, the Majority specifically notes that at the time Section 311 was amended to include the language allowing for the application of the discovery rule, Section 315 was not similarly amended. (Maj. Op. at pp. 370–373).

Mr. Mattern also asks us to extend our application of the discovery rule in instances of occupational disease to compensable injuries. However, there is a distinction between latent and insidious *diseases* under the occupational disease provisions of the Act and latent and insidious *work-relatedness* where the disability is known.

The acknowledgment by the legislature of distinct occupational diseases, as enumerated in Section 108 of the Act including the catch-all provision found in Section 108(n), 77 P.S. § 27.1(n), recognizes that an employer is engaged in what the legislature deems to be an increased risk activity. Such employer assumes a higher degree of responsibility to its employees for engaging in such endeavors, and the application of the discovery rule to such distinct occupational diseases is clearly consistent with this legislative recognition. The latent and insidious nature of an occupational disease, goes to the disease itself, the work-relatedness is presumed or already established.

Other employers, a fortiori, those not participating in such increased risk activities, are responsible for non-occupational disease, compensable injuries for a finite period of time and have not knowingly accepted this increased risk of liability for injuries to their employees. In the typical compensable injury situation, both the disability and the relationship to the employment is known.

3. "... However, in cases of injury resulting from ionizing radiation in which the nature of the injury or its relationship to the employment is not known to the employe, the time for filing a claim shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment...." 77 P.S. § 602.

However, the legislature obviously failed to foresee compensable injury cases, like the one *sub judice,* where the latent and insidious nature of the disability goes not to the injury, but to the work-relatedness of the disability. Unfortunately for the worker, this is a distinction without a difference. An employee, such as Mr. Mattern, who does not suffer from an occupational disease, and, thus, does not benefit from the discovery rule, knows of his disability but does not know of the relatedness of his injury to his employment. However, in these type of injury cases, the employer has not been put on notice and, thus, not had an opportunity to consider the consequences of their liability for this class of injury. Therefore, in my view, a decision to extend the discovery rule to this type of injury, such as the one at bar, requires consideration and action by the General Assembly, rather than by the judiciary.

The resulting harshness of the General Assembly's apparent oversight when amending Section 315 places an employee, such as Mr. Mattern, in the anomalous position of having to give notice and file a claim even though neither he nor the employer knows that the employee's injury is work-related. Here, Mr. Mattern's benefits will be denied even though he filed a petition immediately after he became aware that his injury was work-related. In light of the remedial nature of the Act, and in fairness to claimants who do not suffer from latent and insidious occupational diseases where coverage would be available, but do suffer from work related injuries of a latent and insidious nature, there is no valid reason to grant coverage in the former but deny coverage in the latter. The discovery rule should be applicable in the latter situations in order to eliminate such absurd and unfair results.

Thus, I respectfully encourage the General Assembly to obviate that which I submit is an unfortunate oversight. A simple amendment to Section 315 of the Act in order to allow for the application of the discovery rule to situations such as the one *sub judice,* where the work-relatedness of an injury is not known to an employee within the applicable statute of

limitations, would not only be consistent with the remedial nature of the Act but would also be just and fair.

NIX, Chief Justice, dissenting.

I remain of the view that the discovery rule should not be limited to occupational diseases but should also extend to injuries under section 301(c)(1), 77 P.S. § 411(1), of the Act. *See Eddy v. Workers' Compensation Appeal Bd.*, 534 Pa. 302, 632 A.2d 873 (1993) (Papadakos, J., dissenting). Accordingly, I dissent from the majority's reversal of the Commonwealth Court's award of workers' compensation benefits to Appellant.