Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Bethlehem Steel Company *v.* Gilbert Griffith, Appellant.

624

Argued December 6, 1976, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

*Robert S. Glass,* with him *Glass and Glass,* for appellant.

*Robert G. Rose,* with him *Spence, Custer, Saylor, Wolfe & Rose,* and *James N. Diefenderfer,* for appellees.

OPINION BY JUDGE MENCER, February 16, 1977:

Gilbert Griffith has appealed an order of the Workmen's Compensation Appeal Board (Board) which denied him benefits under The Pennsylvania Work-

men's Compensation Act[1] (Act). The Board upheld a referee's determination that Griffith had not proved that an accident which he suffered in June 1957 was the cause of an eye infection which erupted in October 1960 and that, in any event, since Griffith had not filed a claim petition within sixteen months of the accident, he was therefore barred from pressing his claim by Section 315 of the Act, 77 P.S. §602.

On June 26, 1957, Griffith was engaged in placing white-hot rivets in holes where they would be held by a co-worker and driven into place by another co-worker. While so engaged, Griffith was struck in the right eye by the tool used to hold the hot rivets. He was taken to the employer's dispensary and from there sent to an ophthalmologist, apparently used by the employer in such situations, for further examination and treatment.

The ophthalmologist, Dr. Michael Sivulich, examined the denuded corneal epithelium as well as the burned eyelids and adnexa. In particular, he performed a microscopic examination of the cornea to determine whether it had been penetrated by a foreign body. Finding no evidence of intraocular penetration, Dr. Sivulich treated the above conditions and released Griffith, who returned to work two days later.

The record indicates that Dr. Sivulich next saw Griffith in October 1960.[2] at which time Griffith's right eye was infected. When the eye did not respond to treatment, Dr. Sivulich ordered X-rays. These revealed the presence of an intraocular foreign body, the oxidation of which was the apparent cause of the in-

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1 et seq.

[2] Griffith's brief suggests that in June or July of 1958 Griffith was referred to Dr. Sivulich's office where he was treated over a period of several months for some unspecified eye discomfort. However, such testimony does not appear in the record certified to this Court from the Board.

tractable infection. Attempts to remove the foreign body failed, and the eye had to be surgically removed on December 28, 1960. On February 24, 1961, Griffith filed a claim petition, alleging that the intraocular foreign body was a fragment of the tool with which he was struck in 1957.

In his appeal to this Court, Griffith essentially presents two arguments. First, he contends that the foreign body in his eye was a piece of metal so similar to the metal of the tool involved in the 1957 accident that the referee either should have accepted his evidence on this issue as proving the causal connection between the accident and the infection or should have explained more fully why his evidence was unpersuasive. Second, Griffith contends that his claim is not barred by the statute of limitations contained in Section 315 of the Act. Rather, he suggests that his employer is estopped to assert Section 315 as a defense because he was unintentionally deceived by the ophthalmologist selected by the employer. We conclude that Griffith did not file his petition within the time required by law, and we need not, therefore, deal with his other argument.

Section 315 of the Act was amended in 1956 to provide:

In cases of personal injury all claims for compensation shall be forever barred, unless, within sixteen months after the accident, the parties shall have agreed upon the compensation payable under this article; or unless within sixteen months after the accident, one of the parties shall have filed a petition as provided in article four hereof. In cases of death all claims for compensation shall be forever barred, unless, within sixteen months after the death, the parties shall have agreed upon the compensation under this article; or unless, within sixteen months

after the death, one of the parties shall have filed a petition as provided in article four hereof. Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of sixteen months from the time of the making of the most recent payment prior to date of filing such petition.: Provided, That any payment made under an established plan or policy of insurance for the payment of benefits on account of non-occupational illness or injury shall not be considered to be payment in lieu of workmen's compensation, and such payment shall not toll the running of the Statute of Limitations.[3]

This is the law that applies to the instant case, and it is clear that Griffith, by the terms of the statute, had to file a claim petition within sixteen months of the *accident,* regardless of when a compensable injury occurred. *See Lewis v. Carnegie-Illinois Steel Corp.,* 159 Pa. Superior Ct. 226, 48 A.2d 120 (1946). The legislature made timely filing an express condition of the right to obtain an award of compensation and intended that a failure so to do should operate as an absolute bar of the right. *Palmer v. City of Pittsburgh and Workmen's Compensation Appeal Board,* 9 Pa. Commonwealth Ct. 526, 530, 308 A.2d 179, 181 (1973) ; *accord, Lewis, supra.*

Nevertheless, failure to file within the period set forth in Section 315 is not always an absolute bar. As Judge BLATT, speaking for this Court in *Palmer, supra,* stated,

---

[3] Section 315 was amended by the Act of February 28, 1956, P.L. (1955) 1120. The section remained unchanged until 1972 when it was thrice amended. These amendments, *inter alia,* effected changes in the limitation period (change from sixteen months to two years) and the event which triggers the running of the period (changed from "accident" to "injury"). Section 315 took its present form in 1974.

'However, *the courts can permit a claim to be filed after the time prescribed in the statute if fraud or its equivalent is shown,* which in this connection includes an unintentional deception. The evidence to support such a claim must be clear and precise, more than of doubtful weight. Rowles v. State Workmen's Ins. Fund, 141 Pa. Superior Ct. 193, 200, 14 A.2d 554 (1940). If a person is deceived, even unintentionally, as to his rights by one who has authority to act in the premises, courts will not ordinarily permit such deception to work an injury to the innocent party. Guy v. Stoecklin Baking Co., 133 Pa. Superior Ct. 38, 47, 1 A.2d 839 [843] (1938).'
(Emphasis added.)

9 Pa. Commonwealth Ct. at 530-31, 308 A.2d at 182, citing *Thorn v. Strawbridge & Clothier,* 191 Pa. Superior Ct. 59, 61-62, 155 A.2d 414, 416 (1959).

Judge BLATT continued by assembling the cases in support of her conclusion that virtually all of the cases in which the courts have permitted a claimant to file a petition subsequent to the limitation set forth in Section 315 have involved situations in which the employer's actions or statements have lulled the claimant into a false sense of security as to the claim.[4] The claimant in each of those cases was led to believe that his claim would be taken care of by his employer and that there was no need for any immediate or further action on his part.

In the case at bar, we find that Griffith has not supported his claim of unintentional deception with clear and precise evidence; accordingly, we cannot al-

---

[4] *M. Gordon & Sons, Inc. v. Workmen's Compensation Appeal Board,* 14 Pa. Commonwealth Ct. 288, 321 A.2d 396 (1974), decided after our decision in *Palmer, supra,* may profitably be added to the list.

low him to file a claim after the time prescribed. We are unconvinced that any failure on the part of Dr. Sivulich to detect and notify Griffith of the presence of an intraocular foreign body, if indeed it was present during the 1957 treatment, lulled Griffith into a false sense of security.

Nevertheless, even if Griffith had been so lulled by Dr. Sivulich in 1957,[5] his petition was still not timely filed. This Court has held that unintentional deception does not indefinitely preclude the employer from asserting a defense of untimely filing. Rather, a claimant is given another period within which to file a petition which commences with the deceptive conduct and which continues for a period equivalent to that provided in Section 315. Thus, we have stated that "the sixteen month limitation period is deemed to run from the time of the last conduct or declarations of the employer which lulled the claimant into a false sense of security." *Tarnoski, supra* note 5, 12 Pa. Commonwealth Ct. at 492, 317 A.2d at 906; *see Palmer, supra*. In the instant case, Griffith filed his claim petition on February 24, 1961, more than three years after his acknowledged conversation with Dr. Sivulich.

---

[5] There is some authority which indicates that an employer need not make affirmative statements or take affirmative actions which lead a claimant into believing that his claim will be taken care of or that there is no need for immediate or further action. These cases suggest that, having undertaken an examination or treatment of a claimant's injury, the employer may be under an obligation to notify the claimant of his attitude toward a potential compensation claim. Thus, a failure to notify may estop the employer from asserting that a claim petition was filed too late. *See Tarnoski v. Kanarr Corp.*, 12 Pa. Commonwealth Ct. 488, 317 A.2d 904 (1974); *Angermier v. Hubley Manufacturing Co.*, 206 Pa. Superior Ct. 422, 213 A.2d 171 (1965); *cf. Meyers v. Lehigh Valley Transportation Co.*, 138 Pa. Superior Ct. 569, 10 A.2d 879 (1940) (remanded for findings of fact concerning conduct of insurance carrier and its physician).

Moreover, Griffith has not, by clear and precise evidence of record, shown any contact with either his employer or Dr. Sivulich during the sixteen months immediately preceding the filing of his petition which could have lulled him into a false sense of security, thus extending the limitation period and making his filing timely.[6]

Since Griffith did not file his claim petition within the time required by law, the Board was correct in holding that his claim was barred.

### ORDER

AND Now, this 16th day of February, 1977, the order of the Workmen's Compensation Appeal Board, denying compensation benefits to Gilbert Griffith and filed July 15, 1975, is affirmed.

---

[6] Assuming, *arguendo*, that Griffith was treated by Dr. Sivulich or his associate in June or July of 1958 (see note 2 *supra*) and that the sixteen-month period began to run from this point and not in June 1957, Griffith's filing of February 24, 1961 was still untimely.