632 A.2d 585

**B.P. OIL COMPANY, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (DeFRANK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 5, 1993.

Decided May 25, 1993.

Publication Ordered Sept. 23, 1993.

Charles S. Katz, Jr., for petitioner.

John C. McFadden, for respondent.

Before CRAIG, President Judge, McGINLEY, J., and WRIGHT, Senior Judge.

CRAIG, President Judge.

B.P. Oil Company (employer) appeals an order of the Pennsylvania Workmen's Compensation Appeal Board that affirmed a referee's decision to award compensation benefits to the claimant, Francis Defrank, based on the claimant's complete loss of hearing which resulted from the claimant's exposure to high levels of noise while working for the employer.

The employer raises the following issues on appeal: (1) whether the referee erred in concluding that the claim petition was *not* barred under the three-year statute of limitations

provision of section 315 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 602; (2) whether the board erred in concluding that the "discovery rule" applies to section 315's three-year statute of limitations in occupational noise induced hearing loss cases generally, and specifically where, as in the present case, the claimant filed a petition *before* the date the referee found that the claimant "discovered" the extent and cause of his injuries—the date upon which the claimant's physician diagnosed the claimant's loss and attributed that loss to the claimant's employment; (3) whether the referee erred by: a) failing to make a finding as to the date by which the claimant should have exercised reasonable diligence and *should have known* that he sustained a compensable level of hearing loss, under section 311 of the Act, 77 P.S. § 631, b) failing to identify the date that the claimant provided notice to the defendant, and c) failing to identify correctly the date of examination by the claimant's physician; (4) whether the board erred in concluding that occupational hearing loss is a compensable occupational disease under section 108(n) of the Act, 77 P.S. § 27.1; and (5) even if hearing loss is an occupational disease, whether the referee erred by not making a finding, pursuant to section 108(n), as to whether the incidence of hearing loss is substantially greater in the oil refining industry or in the claimant's occupation, than in the general population.

## FACTS AND PROCEDURAL HISTORY

The facts, as found by the referee, follow. The claimant worked at the employer's oil refinery for thirty-seven years (from 1948 to 1982). In his first four years with the employer, the claimant worked as a labor gang member. The claimant then worked the next four years as a boiler gang member, and served his final twenty-two years with the employer as a guard.

Over the period of his employment, the claimant's varying job duties with the employer exposed him to equipment and machinery at the refinery which produced noise so loud that

the claimant at times could not communicate with his co-workers.

Dr. Debra Perlstein, the claimant's physician, testified that on *February 11, 1988,* after conducting a full examination of the claimant, which included an audiogram and a tympanogram, she opined that the claimant suffered a complete loss of hearing in both ears, and that exposure to noise while the claimant worked for the employer, was a substantial cause of the hearing loss.

The employer offered the testimony of Dr. Joseph Sataloff, an otologist, who, after examining the claimant and reviewing the claimant's medical records, opined that the claimant's hearing loss was not caused by his employment but rather by a combination of diabetes and tynpanosclerosis.

The referee found Dr. Perlstein's and the claimant's testimony credible. The referee found that the claimant suffered a complete loss of hearing because of exposure to noise while employed by the employer. The referee also found that the claimant's disability period began on his last date of employment with the employer, June 14, 1982, and awarded the claimant compensation benefits at a weekly rate of $284.00, from that date.

The referee found that the claimant's hearing loss occurred around June 14, 1982, and that the claimant had provided adequate notice to the employer under the Act. The claimant died on February 4, 1989.

The employer appealed the referee's decision to the board. The board, noting that the referee found that the claimant's last exposure to noise was June 14, 1982, more than three years before the claimant filed a compensation claim, remanded the case to the referee, to make factual findings regarding the timeliness of the claimant's claim petition and notice to the employer under sections 311 and 315 of the Act.

On remand, the referee affirmed his first decision and, without taking new evidence, found that the claimant's injury occurred on June 14, 1982, when he sustained a complete loss of hearing. The referee found that the claimant filed the

petition on *January 22, 1988.* The referee also found that the claimant was not aware of the extent and cause of his injury until Dr. Perlstein examined the claimant in *January of 1988.* However, the record establishes that Dr. Perlstein examined the claimant on *February 11, 1988.*

The employer appealed the referee's decision once again to the board, contending that the referee erred in finding that the claimant provided timely notice to the employer, and that the claim was barred by the statute of limitations. The board affirmed the referee's decision and this appeal followed.

## ANALYSIS

 Where the party with the burden of proof prevails before the referee, and the board takes no additional evidence, our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether any error of law was committed, or whether any constitutional rights were violated. *Exxon Company v. Workmen's Compensation Appeal Board (Grdgon),* 88 Pa.Commonwealth Ct. 642, 491 A.2d 318 (1985).

### 1. Section 315—Statute of Limitations

#### a. In Occupational Disease Cases

The employer contends that, because the referee found that the claimant's date of injury was June 14, 1982, but that the claimant did not file his claim petition until January 22, 1988, the referee should have concluded that the petition was barred under the three-year statute of limitations provision of section 315 of the Act.

 Section 315 provides, in pertinent part, that:
In cases of personal injury all claims for compensation shall be forever barred, unless, within *three years after the injury,* ... one of the parties shall have filed a petition as provided in article four hereof ... However, in cases of injury resulting from ionizing radiation *in which the nature of the injury or its relationship to the employment is not known to the employe,* the time for filing a claim shall not

begin to run until the employe' knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. (Emphasis added.)

Thus, the Act specifically provides for a discovery rule which tolls the running of the three-year statute of limitations in ionizing radiation cases where the injury or its work-related cause is not known to the employee. This court has also held that section 315's discovery rule applies to *occupational disease* cases under the Pennsylvania Workmen's Compensation Act, including those described in section 108(n) of the Act. *Jones & Laughlin Steel Corporation v. Workmen's Compensation Appeal Board (Feiertag)*, 90 Pa.Commonwealth Ct. 567, 496 A.2d 412 (1985). In occupational disease cases, the statute of limitation period begins to run when the claimant receives a *competent medical diagnosis* that his injury is job-related. *Id.* at 574, 469 A.2d at 417.

The employer contends that occupational noise induced hearing loss is not an occupational disease under section 108 of the Act, and thus section 315's discovery rule does not apply in this case.

Section 108 of the Act, which defines compensable occupational diseases, includes in those definitions diseases such as poisoning by arsenic and epitheliomatous cancer. Subsection (n) of section 108, which is a catch-all provision, states that other diseases not specifically enumerated in the other subsections may qualify as occupational diseases under certain conditions. Section 108(n) further provides that:

For the purpose of this clause, *partial loss of hearing in one or both ears due to noise;* and the diseases silicosis, anthracosilicosis and coal workers' pneumoconiosis resulting from employment in and around a coal mine, shall *not* be considered occupational diseases. (Emphasis added.)

In the present case, the parties do not dispute the fact that the claimant suffered a *complete* loss of hearing which resulted from his exposure to high levels of noise when he worked

for the employer. Section 108(n) does not address whether a *complete* loss of hearing may qualify as an occupational disease under that section of the Act.

However, in *Eddy v. Workmen's Compensation Appeal Board (Bell Transit, Incorporated)*, 130 Pa.Commonwealth Ct. 306, 310, 568 A.2d 279, 281 (1989), this court held that section 306(c)(8) of the Act, 77 P.S. § 513 designates *complete* hearing loss as a *specific loss.*

The court noted that in specific loss cases, the *date of the injury,* for the purposes of section 315, is the date when the claimant's doctor *notifies the claimant* of the loss of the use of . his hearing for all practical intents and purposes, and that the injury is job related. *See also Berisford v. Workmen's Compensation Appeal Board (Jessup Steel Company)*, 142 Pa.Commonwealth Ct. 83, 88, 596 A.2d 1237, 1240 (citing *Eddy* for the proposition that in section 306(c) specific loss cases, the date of the injury "is the date when the claimant is notified by a doctor of the loss of use of the member or faculty for 'all practical intents and purposes' and that the injury is job related.")

We held that section 315's *discovery rule* does not apply in hearing loss cases, reasoning that hearing loss cases present circumstances where the focus of the injury is not, "when did the claimant *discover* the injury that already existed,[1] but rather, *when did the injury become an injury." Id.* 130 Pa.Cmwlth.Ct. at 311, 568 A.2d at 282.

The *Eddy* court cites *Universal Cyclops Corporation v. Workmen's Compensation Appeal Board (Cherry)*, 97 Pa.Commonwealth Ct. 399, 509 A.2d 956 (1986), where the referee found that, on June 12, 1981, the claimant suffered a permanent loss of hearing in both ears, for all *practical intent and purposes,* which resulted from exposure to noise while working for the employer. The employer argued that the claimant *knew or should have known* that his injury was work-related because he was aware of his disability as early as

---

1. This analysis applies in occupational disease cases, where the claimant has a latent disease or injury but is unable to *discover* it, or its relationship to his work, until his physician diagnoses the condition.

1973, and because the claimant filed his petition on July 3, 1981, his claim was barred by the three-year statute of limitations.

This court there held that, because the claimant's doctor examined the claimant on June 12, 1981, and informed the claimant of the work-related nature of his complete loss of hearing, June 12 was the date on which the claimant's *injury occurred.* The court noted that it was on that date that the claimant learned of the full extent of his disability, and that it was work-related. *Id.* at 401, 509 A.2d at 957.

Thus, this court determined that the three-year statute of limitations period began to run on June 12, 1981 and held that the claimant's petition, filed on July 3, 1981, was not untimely. *See also Dana Corporation v. Workmen's Compensation Appeal Board (Savage),* 75 Pa.Commonwealth Ct. 474, 462 A.2d 900 (1983) (where this court held that, where the claimants' exposure to industrial noise resulted in a permanent total loss of hearing, and where the claimants may have been aware as early as 1971 that they had work-related hearing problems, the claimants did not *suffer an injury* until 1979, when a physician examined the claimants, and thus the claims were not time barred under section 315).

In this case, the employer contends that in cases like *Universal Cyclops* and *Dana,* the courts apply a "legal fiction" and not a discovery rule, in holding that, in hearing loss cases *the date of the injury* for statute of limitations purposes is the date that the claimant's physician informs him that his condition has progressed to the point of a hearing loss for all practical intent and purposes.

The employer contends that this "legal fiction" only applies to cases where the claimant *continues* in his employment in a noisy environment, where the hearing loss progresses over time, and the date of injury is when a physician diagnoses that the claimant has lost his hearing for all practical intent and purposes. The employer argues that, because the claimant in the present case retired in 1982, the "legal fiction" does not apply here.

However, in *Dana*, this court specifically concluded that the date of the injury is the date when the claimant's physician informs him of the work-relatedness of his hearing loss because:

The record contains medical testimony regarding *the progressive nature of hearing loss* due to cumulative exposure to industrial noise and our Supreme Court has recognized the nature of the injury and *the difficulty in isolating a single moment* when hearing is deemed to be lost for all practical intents and purposes.

*Dana*, 75 Pa.Commonwealth Ct. at 477, 478, 462 A.2d at 902 citing *Hinkle v. H.J. Heinz Company*, 462 Pa. 111, 337 A.2d 907 (1975). (Emphasis added). This court did not limit the hearing loss date-of-injury rule to cases where the claimant *continues* working for the employer. This court simply recognized the difficulty in determining when hearing is lost for all practical intent and purposes, especially in a situation where hearing loss is progressive in nature. In such a case, a claimant may not be aware of the extent and cause of the injury until a doctor so informs him.

In *Martin v. Workmen's Compensation Appeal Board (Jones and Laughlin Steel Corporation)*, 111 Pa.Commonwealth Ct. 201, 203, 533 A.2d 810, 811, (1987), we held that hearing loss which is progressive in nature is not time barred if filed within three years of the time from which a claimant *"is made aware* that his hearing is totally lost for all practical intent and purposes." In that case we distinguished *Dana* and noted that, in *Martin*, the claimant's physician *informed him* of the hearing loss and its job-relatedness five years before he filed his claim petition, and thus, the claim petition was time-barred.

■ In the present case, the referee found that the claimant's loss of hearing was progressive in nature. (Finding of Fact No. 3) In addition, although the claimant testified that he suffered a hearing loss back in 1982, and that he suspected that it was work-related, he also testified that he filed a workmen's compensation claim because his hearing "was *get-*

*ting* bad in January" of 1988. (R. 28a) The claimant further testified before the referee as follows:

Q. When did you first see a doctor about your hearing complaints?

A. In February.

Q. Of What year?

A. Of 1988.

Q. Who was that doctor?

A. Dr. Perlstein.

(R. 42a)

The referee found that the *date of the claimant's injury* was his last date of employment, June 14, 1982. (Finding of Fact No. 3). However, under *Universal Cyclops* and *Dana*, the claimant in the present case did not *suffer an injury* until February 11, 1988, the date on which Dr. Perlstein examined him, and informed his of the nature and extent of his hearing loss, and that it was work-related. Thus, the referee should have found that February 11, 1988 was the date of the claimant's injury.

Because this court has consistently held that, in hearing loss cases, the *date of injury* is the date that a physician informs the claimant of the nature and extent of his hearing loss, in the present case, the statute of limitations period under section 315 did not begin to run until February 11, 1988, which is the correct date of the claimant's injury.

█ Because the claimant filed his petition two weeks before that date, the claimant's petition was not barred by the statute of limitations. The referee's finding that the date of the injury was June 14, 1982, the claimant's last date of employment, is erroneous as a matter of law and must be reversed.

The employer further relies on *Hinkle*, in arguing that hearing loss cases are repetitive trauma cases and not occupational disease cases, and thus, that *the date of the injury* is the last date of the claimant's employment.

However, the Supreme Court in *Hinkle* does not *define* hearing loss cases as repetitive trauma. In addition, unlike *Universal Cyclops* and *Dana*, *Hinkle* does not address the application of section 315 of the Act to hearing loss cases. Also, in defining the nature of hearing loss, the *Hinkle* decision is consistent with the present case.

The *Hinkle* court reasoned that:

The right of a claimant to compensation should not be barred because he cannot *definitely fix the date of the accident resulting in his disability,* either because he cannot remember the precise time when the accident occurred or because *the accident was of such a nature that there is difficulty in ascertaining when it happened.*

*Hinkle,* 462 Pa. at 118, 337 A.2d at 911. (Emphasis added.)

### 2. Section 311—Notice to the Employer

■ The employer also contends that the referee erred by: (1) failing to make a finding as to the date when the claimant, after exercising reasonable diligence, *should have known* that he sustained a compensable level of hearing loss, under section 311 of the Act, (2) failing to identify the date that the claimant provided proper notice to the defendant, and (3) failing to identify correctly, the date of examination by the claimant's physician.

Section 311 provides that:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give *notice* thereof to the employer within *twenty-one* days after the injury, no compensation shall be due until such notice be given, and, *unless* such notice be given within *one hundred and twenty* days *after* the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or *any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until*

*the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment* ... (Emphasis added.)

Thus, section 311's notice provision allows an application of a discovery rule in cases where the claimant does not know the nature of the injury or its relationship to his employment.

In *Cyclops Corporation v. Workmen's Compensation Appeal Board (Sray, Jr.)*, 116 Pa.Commonwealth Ct. 421, 541 A.2d 851 (1988), a hearing loss case under section 306(c) of the Act, this court followed the reasoning in *Universal Cyclops*, supra, and held that the referee correctly found that the *date of the claimant's injury* was the date his doctor diagnosed that the claimant had lost the permanent use of hearing in both ears for all practical intents and purposes, and that section 311's notice period began from that date. Once again, this is not an application of the discovery rule under section 311, but rather, an analysis of when the claimant's injury occurred for purposes of section 311.

The employer contended that certain events should have acted as clues to the claimant to act with *reasonable diligence* under section 311's requirement, to discover the extent and the cause of his hearing loss. *Id.* at 423, 541 A.2d at 853. Specifically, the employer noted that the claimant knew he had a hearing loss four years before the doctor's diagnosis, and that, because the claimant used cotton in his ears at work to protect him from the high levels of noise, he *should have known* of the work-related nature of the hearing loss. *Id.*

This court held that such a finding would be far too speculative. We stated:

There must be evidence that the claimant knew or should have known both that he had a hearing loss which is significant enough to be compensable *and* that the loss was caused by his employment. The evidence of record, specifically the testimony of the claimant and of Dr. bell, supports the finding that the claimant was not aware that he had a significant, work-related hearing loss until he was examined

by Dr. Bell on August 24, 1983. Consequently, we must also reject the petitioner's argument that the referee erred in not making a finding as to when the claimant *knew or should have known of his disability.* Under the circumstances, such a finding was not necessary.

*Id.* (Emphasis added.)

The employer in the present case argues that the rule in *Cyclops* applies only when the claimant *continues* to work for the employer, where it is hard for the claimant to discover when his hearing loss reaches a compensable level. However, *Cyclops* does not support that proposition.

█ Because the claimant in this case did not know of the extent and cause of his injury until Dr. Perlstein's examination on February 11, 1988, section 311's twenty-one and 120 day notice periods started on that date. The claimant filed his petition on January 22, 1988, well within the time requirements of the Act. Like *Cyclops,* the referee was not required here to make a finding of the date when the claimant *knew* or *should have known* of the injury.

### 3. Filing of the Petition

The employer argues that this court should reverse the board's decision because the claimant filed his petition on January 22, 1988, two weeks before Dr. Perlstein's diagnosis, and thus, the claimant's action in filing the claim is inconsistent with the conclusion that, under sections 315 and 311, the claimant only knew of his injury two weeks later on February 11, 1988, the date of the doctor's diagnosis.

In *Split Vein Coal Company v. Workmen's Compensation Appeal Board (Erdman),* 124 Pa.Commonwealth Ct. 642, 556 A.2d 958 (1989), the claimant, who suffered a work-related black lung disease, filed his claim petition twenty days before the claimant's doctor diagnosed his condition.

This court held that, although it was unusual that the date of notice preceded the date of the doctor's diagnosis, which is the date that this court held that the claimant had notice of his

disease under section 311, the timing of the filing was insignificant. This court stated:

> Obviously, the claimant might have had difficulty proving his disability on July 6, 1982, when his condition was merely a suspicion, but he was able to conclusively prove disability by the time this matter came before the referee. We also see no prejudice to the employer by this early notice, and none has been alleged.

*Id.* at 648, 556 A.2d at 961.

We also noted the claimant could not have constructive knowledge of the injury *before* the actual date of the injury, which was the date of the doctor's diagnosis. *Id.*

Thus, because the *date of injury* in specific loss cases under section 306(c) of the Act, such as a complete loss of hearing, is the date when a claimant's doctor informs him of the nature and extent of his disability, and that it is work-related, the early filing of the petition does not affect the claimant's fulfillment of the statutory time requirements of sections 315 and 311 of the Act. The claimant here, as in *Split Vein,* could not have constructive knowledge of an injury before the injury occurred—which is the date of the medical diagnosis. In addition, the employer was not prejudiced by the fact that the claimant filed his petition two weeks before Dr. Perlstein's diagnosis.

### 4. The Date of Dr. Perlstein's Diagnosis

The employer also contends that the board's decision should be reversed because the referee erred in finding that Dr. Perlstein examined the claimant in January of 1988. (Finding of Fact No. 4) However, because the record establishes, and both parties agree, that the doctor examined the claimant on February 11, 1988, such error on the part of the referee was harmless, and thus, there is no need to reverse the decision on that basis.

Accordingly, the decision of the board is affirmed.

## ORDER

NOW, May 25, 1993, the decision of the Pennsylvania Workmen's Compensation Appeal Board, dated July 15, 1992, at No. A91–2012, is affirmed.