**ROADWAY EXPRESS, INC., Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (SIEKIERKA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 6, 1997.

Decided Feb. 17, 1998.

Michael W. Jones, Huntingdon, for petitioner.

Charles L. Consagra, Richard F. Goldenziel, Scranton, for respondent.

Before McGINLEY and FLAHERTY, JJ., and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

Roadway Express, Inc. (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board), which affirmed that portion of a decision of a Workers' Compensation Judge (WCJ), which concluded that James Siekierka's (Claimant) petition for specific loss was not time-barred, but reversed the WCJ's determination that Claimant's average weekly wage should be calculated from the date of the incident leading to the specific loss. We affirm in part and reverse in part.

The facts of this case, as stipulated to by the parties, are as follows:

1. The Claimant suffered a work-related injury to this left eye while in the course and scope of his employment as a dockworker on April 30, 1990. The injury occurred while the Claimant was stripping a freight trailer and an unsecured tarp strap came loose and struck him in the left eye.

2. Notice to his employer of the work injury occurrence was given on April 30, 1990, when an accident report was filed.

3. The Claimant has not missed work as a result of his work-related injury and has not suffered any period of disability.

4. Effective April 30, 1990, the Claimant's average weekly wage was $580.35.

5. Dr. Radu Pacurariu has treated the Claimant's left eye condition since May 4, 1990 and continuing through the present, as noted by his office notes, which are attached hereto.

6. Since March 1, 1994, Dr. Pacurariu ordered increased vigilance and increased the frequency of the Claimant's office visits for treatment of his left eye condition. Dr. Pacurariu's opinion is that the Claimant lost his eyesight in the left eye for all intents and purposes, and he communicated that fact to the Claimant on March 1, 1994.

7. Effective March 1, 1994, the Claimant's average weekly wage was $841.99.

8. The Claimant filed his Claim Petition on April 22, 1994, more than 3 years after the work-related injury occurrence to the Claimant's left eye on April 30, 1990.

9. No Notice of Compensation Payable was ever issued and no payments of disability benefits were ever paid by the employer, though the employer did make payments on medical bills presented for treatment of the Claimant's left eye. Claimant contends that the Statute of Limitations as to when the specific loss occurred should be upon receiving information from his doctor, as stated in paragraph six (6). Defendant contends that the Statute of Limitations should run from the date of the original injury, not the date on which the injury resolved into a specific loss.

10. At the Defendant's request, an independent medical evaluation of the Claimant's left eye was performed on August 16, 1994, by Dr. Joseph F. Morrison, Jr. Dr. Morrison concluded that the Claimant has lost the use of his left eye for all practical intents and purposes. A copy of Dr. Morrison's IME report is attached hereto.

11. The parties are in agreement that the outcome of this matter turns on two separate, though related, legal issues:

(1) Whether the 3–year Statute of Limitations (77 P.S. § 602) within which the Claimant must file a Claim Petition or lose his right to benefits in this case begins to run from the date of the original work-related trauma (i.e., April 30, 1990), thus barring his claim in the case at bar, or from the date he received notice as set forth in paragraph six (6) (i.e., March 1, 1994), thus preserving his claim in the case at bar?

(2) If the Statute of Limitations does not bar Claimant's Claim for specific loss, whether the applicable average weekly wage is to be calculated as of the date of the work injury occurrence (April 30, 1990), or as of the date the injury resolved into a specific loss (i.e., when the Claimant lost the use of his left eye for all practical intents and purposes on March 1, 1994)?

In accordance with the above, there is no dispute that Claimant suffered a work-related trauma to his left eye on April 30, 1990, that notice of the accident was given to the Employer on the same date and that Claimant did not suffer any period of disability as a result of the work incident. Additionally, it is undisputed that on March 1, 1994, Dr. Pacurariu, an ophthalmologist, informed Claimant that he had lost the use of his left eye for all practical intents and purposes and that Claimant filed a claim petition on April 22, 1994.

On March 29, 1995, the WCJ determined that the Claimant's claim petition was not time-barred by the three-year statute of limitations contained in Section 315 of the Worker's Compensation Act because it was not until March 1, 1994, that Dr. Pacurariu, who regularly treated him, first opined and advised Claimant that he had lost the eyesight in his left eye for all practical intents and purposes.[1] On that date, Dr. Pacurariu also ordered increased vigilance and increased the frequency of Claimant's office visits for treatment of his left eye condition. The WCJ also found that there was no intervening or cumulative type of trauma to Claimant's eye that resulted in the specific loss. Because Claimant filed the claim petition on April 26, 1994, within three years of his March 1, 1994 medical advice which the WCJ concluded qualified as a specific loss, the WCJ concluded that the petition was not time-barred. Additionally, the WCJ determined that Claimant's average weekly wage as of April 30, 1990, should be used in determining Claimant's compensation rate.

On appeal, the Board affirmed the WCJ's decision that Claimant's petition was not barred by the applicable three-year statute of limitations. However, the Board determined that the calculation of Claimant's average weekly wage should be based upon his March 1, 1994, wages because that was the date Claimant sustained his injury in the nature of a specific loss, and that was the date when the doctor determined that Claimant lost the use of his left eye for all practical intents and purposes. This appeal by Employer followed.[2]

Initially, we must determine whether Claimant's petition is barred by the three-year statute of limitations contained in Section 315 of the Act, 77 P.S. § 602, which provides:

In cases of personal injury all claims for compensation shall be forever barred unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof. . . . However, in cases of injury resulting from ionizing radiation in which the nature of the injury or its relationship to the employment is not known to the employee, the time for filing a claim shall not begin to run until the employee knows, or

---

1. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 602.

2. This court's review is limited to determining whether an error of law was made, constitutional rights were violated, or whether necessary findings are supported by substantial evidence. *Arthrell v. Workmen's Compensation Appeal Board (State Police)*, 154 Pa.Cmwlth. 633, 624 A.2d 686 (1993).

by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.[3]

Employer maintains that, while Claimant's specific loss occurred on March 1, 1994, Claimant's injury actually occurred on April 30, 1990, when a tarp strap struck him in the left eye. Employer relies on this court's decision in *Workmen's Compensation Appeal Board v. Griffith*, 28 Pa.Cmwlth. 623, 368 A.2d 1371 (1977). In *Griffith*, on June 26, 1957, the claimant was struck in the eye with a tool used to hold hot rivets. A fragment of the tool remained in his eye causing an infection which led to removal of the eye in December of 1960. In February of 1961, the claimant filed a claim petition.

This court upheld a referee's determination that Griffith was time-barred from proving that the accident of June 26, 1957, caused the eye infection and subsequent removal in December of 1960. We held that, at that time, former Section 315 of the Act required that a claim for compensation must be brought "within sixteen months of the *accident*, regardless of when a compensable injury occurred." *Id.* 368 A.2d at 1374 (emphasis in original). Because the claimant had not filed a claim within sixteen months of his *accident*, his petition was time barred.

However, Section 315 of the Act was later amended and now requires that a claim for compensation be brought within three years after the *injury*. 77 P.S. § 602. Unlike *Griffith*, the date of Claimant's *accident* is irrelevant. The inquiry before us is when did Claimant's *injury* occur.

Employer also relies on *McDevitt v. Workmen's Compensation Appeal Board (Ron Davison Chevrolet)*, 106 Pa.Cmwlth. 207, 525 A.2d 1252 (1987), which sets forth the general rule that it is the date of a claimant's injury which commences the three-year limi-

tation and the date of claimant's disability is irrelevant. Although the date of a claimant's disability is irrelevant for purposes of the statute of limitations, the case before us does not involve a disability, but rather a specific loss. Thus, *McDevitt* does not apply and the question that still remains is when did Claimant's *injury* occur.

■ In this case, which involves a specific loss, we are inclined to agree with the WCJ and Board that the date of Claimant's injury is March 1, 1994, when Dr. Pacurariu informed him that he had lost his eyesight for all practical intents and purposes. This is so because "in *specific loss cases* under Section 306(c) of the Act, 77 P.S. § 513, the date of the injury is the date when the claimant is notified by a doctor of the loss of use of the member *or faculty* for 'all practical intents and purposes' and that the injury is job related in nature."[4] *Eddy v. Workmen's Compensation Appeal Board (Bell Transit, Inc.)*, 130 Pa.Cmwlth. 306, 568 A.2d 279, 281 (1989) (emphasis added).

As a specific loss case involving the sense of eyesight, we must determine if the loss took place at an indeterminable point in time in order to see if this case is akin to other specific loss cases involving the loss of one of the other senses, i.e., the hearing loss cases. This court has consistently held that, in the loss of the sense of hearing, the statute of limitations does not begin to run until the date the doctor informs the claimant of the specific loss, which fixes the date of the injury. Just as in hearing loss cases, a progressive diminution of vision also makes it difficult, if not impossible, for Claimant to know that he had lost the sight of his eye for all practical intents and purposes, then Claimant cannot be held to know of his specific loss until so advised by his doctor. It is, therefore, incumbent upon the WCJ to determine if the case *sub judice* falls within the

---

**3.** As the Board and Claimant acknowledge, the discovery rule, which permits a claimant to file a petition within three years of discovering that he was injured and that his injury was work-related, is inapplicable to the instant case, because that rule only applies to cases where the claimant is suffering from ionizing radiation or an occupational disease. *Arthrell.*

**4.** Section 306(c) of the Act reads:

"For all disability resulting from permanent injuries of the following classes, the compensation shall be exclusively as follows: ... (7) For the loss of an eye, sixty-six and two-thirds per centum of wages during two hundred seventy-five weeks."

rationale of the hearing loss cases by determining whether or not it is possible to isolate the moment when the eyesight is deemed lost for all practical intents and purposes other than when the doctor so advised him. If the Claimant knew shortly after this accident happened on April 30, 1990, that his eyesight was completely lost or, if he knew it before April 22, 1991, over three years before he filed suit, then the Claimant's petition filed April 22, 1994, would be barred by the three-year statute of limitations in Section 315 of the Act. *Hermanson v. Workmen's Compensation Appeal Board,* 156 Pa. Cmwlth. 556, 628 A.2d 514 (1993), *petition for allowance of appeal denied,* 536 Pa. 633, 637 A.2d 293 (1993).[5]

In *Hinkle v. H.J. Heinz Co.,* 462 Pa. 111, 337 A.2d 907 (1975), our Supreme Court recognized the difficulty in isolating the moment when hearing is deemed lost for all practical intents and purposes in noise-induced hearing loss cases. This is so because of its insidious and slowly progressive nature. *Sellari v. Workmen's Compensation Appeal Board (NGK Metals Corp.),* 698 A.2d 1372 (Pa.Cmwlth.1997). Because of the nature of the disease and its slow progression, it is difficult to isolate the moment when the sense of hearing is lost for all practical intents and purposes. Hence, the date of injury in a hearing loss case is the date that a physician informs the claimant of the nature and extent of his hearing loss and that it is work-related. *B.P. Oil Co. v. Workmen's Compensation Appeal Board (DeFrank),* 158 Pa.Cmwlth. 8, 632 A.2d 585 (1993). Until a loss of hearing progresses to the point where it is a loss for all practical intents and purposes, there is no injury. *Universal Cyclops Corp. v. Workmen's Compensation Appeal Board (Cherry),* 97 Pa.Cmwlth. 399, 509 A.2d 956 (1986).

■ In *B.P. Oil,* this court explained that, in a specific loss involving the loss of the use of hearing, "the focus of the injury is not, when did claimant *discover* the injury, but rather, *'when did the injury become an injury.'*" *Id.* 632 A.2d at 588 (citation omitted)

(emphasis in original). It is difficult to determine when hearing is lost for all practical intents and purposes, especially in situations where the hearing loss is progressive in nature. "In such a case, a claimant may not be aware of the extent and cause of the injury until a doctor so informs him." *Id.* at 589. Thus, in a hearing loss case, the statute of limitations period under Section 315 begins to run on the date of a claimant's injury, which is the date when the claimant's physician informs him of the nature and extent of his hearing loss and that it is work-related. *B.P. Oil.*

In this case, there is only a single traumatic event to the eye, not cumulative trauma as is usually the case with hearing loss. There is, however, the similarity of a specific loss, which occurred after apparent gradual diminishment of the sight of the eye without any resultant disability. Although claimant was obviously aware that he had a work-related eye problem which was being treated, the WCJ found that he was not aware that he had completely lost the sight in his left eye for all practical intents and purposes until his doctor advised him. The WCJ and the Board properly concluded, therefore, that this Claimant's specific loss is akin to a hearing loss case where the statute of limitations does not begin to run until the date the Claimant's doctor informs him of his specific loss, which is the date of the injury. To hold otherwise would produce an absurd result because Claimant had no right to file a petition for compensation until his medical problem involving his eyesight resolved itself by way of becoming a specific loss, because he had suffered no disability prior thereto.

Claimant's progressive loss of eyesight is evidenced by his treatment with Dr. Pacurariu, who, after treating Claimant for almost four years, advised him on March 1, 1994, that he had lost the complete sight in his left eye for all practical intents and purposes, ordered increased vigilance and increased the frequency of office visits for treatment after March 1, 1994 through March 7, 1995, the date of stipulation.

5. In *Hermanson,* where the claimant was fully aware of both the extent and cause of his hearing loss six years before he was informed of that fact by a doctor, the claimant's petition was barred by the statute of limitations.

Although counsel stipulated that Dr. Pacurariu had treated Claimant since May 4, 1990, "as noted by his office notes," which were attached to and made part of the stipulation, actually the notes show that Dr. Pacurariu treated Claimant on the date of the accident after another physician referred Claimant to him. Dr. Pacurariu's notes show that he examined the then twenty-seven year old Claimant on April 30, 1990, while he was complaining of pain, dizziness, nausea and blurred vision. He made a diagnosis of traumatic cataract and subluxated lens of the left eye. Dr. Pacurariu also saw Claimant on May 2, 11, 30 and on June 27. He then saw Claimant on August 29, September 12, and December 19, 1990, and every six months thereafter through January 22, 1993 and then on March 1, 1994, when he first communicated to Claimant that he had lost eyesight in his left eye for all practical intents and purposes. In addition, Dr. Pacurariu referred Claimant to another doctor on July 25, 1990, who found 20/20 vision in his right eye and prescribed glasses after arriving at virtually the same diagnosis as Dr. Pacurariu for the left eye. Claimant returned to the referral doctor on September 12, 1990, however, complaining that the "new vision is not clear with new glasses." (R.R. at 26a.) On August 16, 1994, Employer's expert, Dr. Morrison, confirmed that Claimant has lost the use of his left eye for all practical intents and purposes.

Dr. Pacurariu's office notes are evidence that Claimant was seen extensively by him after the traumatic incident of April 30, 1990. The notes indicate that, over the four-year period of treatment, there was no change in Claimant's right eye vision but considerable changes in his left eye vision. The notes indicate such changes were a progressive diminution of the sight in the left eye.

The WCJ had substantial evidence, therefore, to find that the trauma from the accident of April 30, 1990, did not cause an immediate complete loss of vision but that there was a progressive diminution of eyesight in the left eye which prevented Claimant from knowing that he had lost his eyesight completely for all practical intents and purposes until March 1, 1994, when it is agreed that Dr. Pacurariu first advised Claimant of its complete loss.

The next issue before us is whether Claimant's average weekly wage should be determined as of April 30, 1990, the date of the traumatic occurrence or March 1, 1994, the date of the specific loss. The WCJ determined that Claimant's average weekly wage as of April 30, 1990, should be used in determining Claimant's compensation rate. On appeal, the Board determined that Claimant's weekly wage as of March 1, 1994, should be used. Employer argues that the Board erred in *sua sponte* reversing the WCJ's determination on this matter. We agree.

■ The issue of whether the WCJ properly calculated Claimant's compensation based on his average weekly wage was not an issue raised before the Board. By failing to appeal the WCJ's decision as to the proper calculation of Claimant's compensation rate, Claimant waived any argument that the WCJ's decision was erroneous. *USX Corp. v. Workmen's Compensation Appeal Board (McDermott)*, 152 Pa.Cmwlth. 174, 618 A.2d 1150 (1992). As this issue was not properly before the Board, we agree that the Board erred in addressing it *sua sponte*.

For the foregoing reasons, we affirm the Board's decision that Claimant's petition is not time-barred by the three-year statute of limitations. We reverse the Board's determination to the extent that it calculated Claimant's benefits based upon his weekly wage as of March 1, 1994, rather than April 30, 1990.

### ORDER

NOW, February 17, 1998, the order of the Workers' Compensation Appeal Board, at A95–1731, dated December 12, 1996, is reversed to the extent that it calculated James Siekierka's benefits based upon his weekly wage as of March 1, 1994, rather than April 30, 1990. The order is affirmed in all other respects.