938 A.2d 233

**J.G. FURNITURE DIVISION/BURLINGTON**
**and Liberty Mutual Insurance Company**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KNELLER)**

Appeal of J.G. Furniture Division/Burlington
and Kemper Insurance Company.

J.G. Furniture Division/Burlington and Liberty
Mutual Insurance Company

v.

Workers' Compensation Appeal Board (Kneller)

Appeal of J.G. Furniture Division/Burlington
and Kemper Insurance Company.

Supreme Court of Pennsylvania.

Argued May 10, 2006.

Decided Dec. 27, 2007.

Sharolyn L. Murphy, Esq., for J.G. Furniture/Kemper Insurance Co.

Amber Marie Kenger, Esq., Richard C. Lengler, Esq., for Workers' Compensation Appeal Board.

Rodney D. Henry, Esq., Quakertown, for Willard S. Kneller.

Katherine Marie Mezzanotte, Esq., for J.G. Furniture/Liberty Mutual Insurance.

## *OPINION*

Justice EAKIN.

On January 21, 1976, Williard Kneller suffered an injury to his left index finger in the scope of his employment with appellant J.G. Furniture Division/Burlington. Claimant received temporary total disability benefits through employer's insurer, Liberty Mutual Insurance Company, until August 29, 1978, when the parties executed a final receipt with respect to the injury.[1] Claimant returned to work.

In 1983, claimant filed a petition to set aside the final receipt, alleging he experienced continued impairment of the

1. Section 1001 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *added by* § 434 of the Act of June 26, 1919, P.L. 642, *as amended*, 77 P.S. § 1001, states:

A final receipt, given by an employe or dependent entitled to compensation under a compensation agreement notice or award, shall be prima facie evidence of the termination of the employer's liability to pay compensation under such agreement notice or award: Provided, however, That a referee designated by the department may, at any time within two years from the date to which payments have been made, set aside a final receipt, upon petition filed with the department, or on the department's own motion, if it be shown that all disability due to the injury in fact had not terminated.

77 P.S. § 1001.

finger due to circulatory problems. Over the next decade, several decisions were issued by the Workers' Compensation Judge (WCJ) regarding this petition, each of which was appealed to the Workers' Compensation Appeal Board (WCAB) and subsequently remanded. In December, 1996, the WCAB again remanded the matter to the WCJ, this time for conclusions of law concerning the statute of limitations for filing a petition to set aside a final receipt.

Before the WCJ issued these conclusions, Liberty Mutual filed a petition for suspension/review of benefits, alleging claimant sustained a specific loss of use of the entire finger a dozen years earlier—indeed, claimant's finger had been amputated in 1984. The parties stipulated claimant was entitled to specific loss benefits, which rendered moot the petition over which they had wrestled for so many years. Thus, the only issue before the WCJ was whether claimant's specific loss benefits should be calculated based on his average weekly wage at the time of the original injury in 1976, or the date of the amputation in 1984. The WCJ concluded benefits should be calculated based on claimant's 1976 wages, and ordered Liberty Mutual to pay such benefits. On appeal, the WCAB disagreed, and remanded for recalculation of benefits using claimant's 1984 wages, having determined his specific loss injury occurred when his finger was amputated.

On appeal, a majority of the Commonwealth Court agreed that claimant was entitled to benefits based on his 1984 wages, but held Kemper Insurance Company (which had replaced Liberty Mutual as employer's workers' compensation provider) was responsible as it was the provider at the time of the amputation. *J.G. Furniture Division/Burlington v. WCAB (Kneller)*, 862 A.2d 689 (Pa.Cmwlth.2004). Judge Leadbetter dissented on the basis the decision conflicted with the interpretation of "injury" in existing case law. *Id.*, at 692–96 (Leadbetter, J., dissenting).

 This Court's appellate review in workers' compensation matters is limited to determining whether an error of law has been committed, whether constitutional rights have been

violated, whether the WCAB's practices or procedures were followed, and whether necessary findings of fact are supported by substantial evidence. *See* 2 Pa.C.S. § 704; *Hannaberry HVAC v. WCAB (Snyder, Jr.),* 575 Pa. 66, 834 A.2d 524, 527 (2003). In examining questions of law, our scope of review is plenary. *Daniels v. WCAB (Tristate Transport),* 574 Pa. 61, 828 A.2d 1043, 1046–47 (2003).

■ Temporary disability benefits are available under §§ 511 and 512 of the Act, 77 P.S. §§ 511, 512, while permanent or "specific loss" benefits are available under § 513. The Act defines "wages" in terms of the claimant's weekly pay "at the time of the injury." *Id.,* § 582. The present question involves the "injury" entitling claimant to specific loss benefits—did it occur in 1976, or 1984? Clearly an initial injury occurred in 1976, but the permanent loss occurred with the amputation in 1984, and we must determine which date's wages are to be used in calculating benefits.

The Commonwealth Court relied on *Roadway Express, Inc. v. WCAB (Siekierka),* 708 A.2d 132 (Pa.Cmwlth.1998). In that case, however, the court specifically refused to address whether benefits for specific loss are based on the date of the injury or the date the injury resolves into a specific loss, since the parties failed to raise that issue on appeal. Rather, *Roadway Express* addressed whether the statute of limitations involved the date claimant suffered trauma to his eye, or when he was advised by a doctor that he had lost the use of the eye "for all practical intents and purposes." *Id.,* at 134. The Commonwealth Court stated:

> In this case, which involves a specific loss, we are inclined to agree with the WCJ and [the WCAB] that the date of Claimant's injury is March 1, 1994, when Dr. Pacurariu informed him that he had lost his eyesight for all practical intents and purposes. This is so because "in *specific loss cases* under ... § 513, the date of the injury is the date when the claimant is notified by a doctor of the loss of use of the member *or faculty* for 'all practical intents and purposes' and that the injury is job related in nature." *Eddy v. Workmen's Compensation Appeal Board (Bell*

*Transit, Inc.)*, 130 Pa.Cmwlth. 306, 568 A.2d 279, 281 (1989) (emphasis added).

*Id.*, at 135 (footnote omitted) (emphasis in original).

Appellants argue *Bethlehem Mines Corporation v. WCAB (Kozlovac)*, 108 Pa.Cmwlth. 317, 529 A.2d 610 (1987) and related cases [2] establish a specific loss injury is an injury as of the date of the initial insult, such that the original compensation rate applies, and the maturity date of the injury is irrelevant. Thus, it is argued, the central inquiry in determining the appropriate wage in specific loss cases is not *when* an injury became a specific loss, but simply *whether* it became a specific loss.

The claimant in *Bethlehem Mines* injured his foot in 1982 and began receiving total disability benefits. The employer filed a modification petition, alleging the injury had resolved into a specific loss. The referee awarded specific loss benefits, and relying on the rule that a claimant who sustains an injury compensable under § 513 is not entitled to additional compensation for that same injury even if he is totally disabled,[3] awarded the employer credit for benefits paid from the date the injury resolved into a specific loss. The employer appealed, arguing it was entitled to credit for benefits paid from the date of the original injury.

The Commonwealth Court agreed with the employer, determining the claimant failed to establish more than a single compensable injury, and thus was only entitled to the specific loss benefits. Under such circumstances, the court held, the employer was entitled to credit for all benefits paid for the injury from the time the injury was sustained; the date the injury resolved into a specific loss was irrelevant. *Bethlehem Mines*, at 611. Appellants assert *Bethlehem Mines* and the

**2.** *Bethlehem Mines* is representative of other cases cited by appellant and the suggested principles for which they are offered. We will address arguments based on those cases via our discussion of *Bethlehem Mines*.

**3.** *See, e.g., Hayden v. Stony Springs Coal Co., et al.*, 157 Pa.Super. 423, 43 A.2d 384 (1945); *Yanik v. Pittsburgh Terminal Coal Corporation, et al.*, 150 Pa.Super. 148, 27 A.2d 564 (1942).

related cases establish that in all specific loss cases, the date of injury is the date of the initial insult, such that the original compensation rate applies, and the date the injury becomes a specific loss is irrelevant.

We are not persuaded by appellants' interpretation. *Bethlehem Mines* involves entitlement to credit, where the entitlement to benefits did not cease between the injury and the specific loss. The court there found the claimant failed to establish the loss of the use of his foot was anything but the natural progression of the initial impairment, and thus held he suffered a single compensable injury, a specific loss in 1984. The employer was entitled to credit for benefits paid because of the injury, but there was no issue in the Commonwealth Court's opinion about which date's wages would be used to calculate benefits. Indeed, in that case the claimant was permanently disabled from the original injury and never returned to work; his wages appear to have been unchanged, or at least not an issue in the case.

■ As the dissent notes, existing case law treats an "aggravation" of a prior compensable disability as a new injury, entitling a claimant to benefits based on wages at the time of the aggravation, while a "recurrence" is treated as a continuation of the initial injury, entitling the claimant to benefits based on wages at the time of the original injury. *J.G. Furniture Division/Burlington*, at 694 (Leadbetter, J., dissenting) (citing *South Abington Township v. WCAB*, 831 A.2d 175, 181 (Pa.Cmwlth.2003)).[4] The dissent likened claimant's 1984 amputation to a recurrence of the initial injury since it was the "direct result and natural progression of the 1976 injury." *Id.*, at 696. The dissent stated it would be inconsistent with the purposes of the Act to award specific loss

---

4. In *South Abington,* the court described the difference between a recurrence and an aggravation as follows: "if a compensable disability results directly from a prior injury but manifests itself on the occasion of an intervening incident which does not contribute materially to the physical disability, then the claimant has suffered a recurrence. Conversely, where the intervening incident does materially contribute to the renewed physical disability, a new injury, or aggravation, has occurred." *South Abington,* at 181 (emphasis and citations omitted).

benefits based on claimant's 1984 wages when he would only be entitled to benefits based on his 1976 wages if he had experienced merely a recurrence of his original injury.

We respectfully disagree with this conclusion. It is difficult to think of amputation as less than an "aggravation" of the prior injury. The amputation in 1984 was not a mere recurrence of the prior temporary injury for which claimant signed a final receipt six years previously, the efficacy of which the insurer defended for another dozen years. Having an injured finger that hurts in winter is not pleasant, but to lose the finger entirely is, at the very least, an "aggravation." As such, we cannot accept the dissent's application of the cited case law.

There remains the suggestion that the appropriate wage in specific loss cases does not depend on *when* an injury became a specific loss, but simply *whether* it became a specific loss. This may be true where, as in *Bethlehem Mines,* the claimant receives permanent benefits from the time of the initial injury, wages being thus unchanged between injury and specific loss. However, where entitlement to benefits has been terminated, and only reestablished by intervening trauma such as amputation, the logic of the suggestion loses traction.

From 1978 until 1983, there was no claim for a compensable injury, much less entitlement to benefits for it. Until 1996, there was no acknowledgment of a specific loss at all, despite the absent finger. For more than 13 years, employer's insurer took the position the final receipt was the end of compensation payable for the injury. As of the date of the amputation, there certainly was no suggestion much less agreement that the prior trauma merely recurred and became a permanent loss. Even if it was the insurer that finally suggested in 1996 there was entitlement to specific loss benefits, it appears a bit disingenuous to have resisted any entitlement to benefits for the 1976 injury, lo these many years, and now claim 1976 is indeed the relevant date that spawned entitlement and hence must be used for calculations.

■ We conclude an amputation occasioned by that earlier injury, for which a final receipt was executed, is neither a recurrence nor an aggravation of the initial injury; it constitutes a separate compensable specific loss injury. Therefore, we hold claimant is entitled to permanent loss benefits based on his wage on the date of the specific loss injury, September 6, 1984. Since Kemper was the workers' compensation provider at the time claimant suffered the specific loss injury, it is responsible for paying claimant's specific loss benefits.

Order affirmed. Jurisdiction relinquished.

Justice BALDWIN did not participate in the consideration or decision of this case.

Former Justice NEWMAN did not participate in the decision of this case.

Chief Justice CAPPY and Justice BAER join the opinion.

Justice SAYLOR files a dissenting opinion in which Justice CASTILLE joins.

Justice SAYLOR, dissenting.

I respectfully disagree with the majority's classification of the amputation of Claimant's index finger as an "injury." Particularly in light of the workers' compensation judge's undisturbed factual finding that the problems with and ultimate amputation of Claimant's index finger were the result of the original work injury, I believe that the amputation is better viewed as reasonable medical treatment that was causally related to the Claimant's 1976 injury.[1] From this per-

1. In distinguishing the amputation from the original injury, the majority places considerable reliance upon the absence of any claim for a compensable injury from 1978 to 1983 and Employer's initial position that the execution of a final receipt effected an end to compensation payable for the injury. *See* Majority Op. at 66–68, 938 A.2d at 237–38. Such reliance, however, fails to account for Claimant's statement in the petition to set aside the final receipt that he had experienced continuing problems with his hand, which prompted a visit for treatment in 1980; Claimant's testimony and contentions in connection with his efforts to set aside the final receipt, *see* Opinion of WCJ Perry, August 25, 1995;

spective, I would merely conclude that, upon such treatment, Claimant's existing injury resolved into a specific loss.

Finally, I agree with Judge Leadbetter's observation that the remedial aims of the Workers' Compensation Act might better be served by utilizing a claimant's current wages upon resolution of an injury into a specific loss to calculate specific loss benefits. *See J.G Furniture v. Workers' Compensation Appeal Board (Kneller)*, 862 A.2d 689, 696 (Pa.Cmwlth.2004) (Leadbetter, J., dissenting). I believe, however, that the application of traditional principles pertaining to the existing statutory scheme yields the opposite result. As such, and given that the Act represents a compromise between the remedial goal and the furtherance of legitimate business interests, I conclude that any adjustment to the present scheme is better left to the Legislature.

Justice CASTILLE joins this dissenting opinion.

and the workers' compensation judge's undisturbed factual finding concerning causation referenced above.